## ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD COMPANY *v.* CLEVELAND, COLUMBUS, CINCINNATI, AND INDIANAPOLIS RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF ·THE UNITED STATES FOR THE· DISTRICT OF INDIANA.

No. 192. Argued March 22, 1888. — Decided April 16, 1888.

The rule charging operating expenses of.a railroad, debts due from it to connecting lines growing out of an interchange of business, debts due for the occupation of leased lines, and, generally, debts created under special circumstances which make an equity in favor of the unsecured debtor, upon the gross income of the road before a fund arises for the payment of mortgage interest, is not applicable to a fund realized from a sale of the road under·foreclosure of a mortgage; and, as a general rule, unsecured debts of the company cannot, in such case, take prece-

dence over debts secured by prior and express liens, in the distribution of the proceeds of the sale of the mortgaged property.

The court holds on the proof in this case: (1) that no gross earnings which should have been applied to the payment of the rent due the appellant were diverted to the payment of interest upon bonds of mortgage bondholders represented in this suit and interested in the distribution of the fund; and (2) that the appellant has no equitable right, as against the appellees, to priority of payment out of the fund.

THE decree appealed from in this case was rendered upon an intervening petition of the St. Louis, Alton and Terre Haute Railroad Company, filed October 30, 1882, in a suit then pending in the Circuit Court of the United States for the District of Indiana, wherein Hinman B. Hurlbut was complainant, and the Indianapolis and St. Louis Railroad Company defendant, the object of which suit was to foreclose the second and third mortgages, in which Hurlbut was the surviving trustee, upon the railroad and other property of the defendant. A decree of foreclosure and sale had been rendered therein on May 22, 1882, in pursuance of which the mortgaged premises were sold on July 28, 1882, for the sum of $1,396,000, subject to the outstanding first mortgage, and, at the date of the filing of the intervening petition of the present appellant, they had become by purchase the property of the Indianapolis and St. Louis Railway Company. The proceeds of the sale were under the control of the court for purposes of distribution; and the matter had been referred to a master in chancery to hear evidence in support of the claims of any creditor claiming the right to share in that distribution, and to make report thereon.

The petition alleged, and it so appeared, that by a decree of the Circuit Court of the United States for the District of Indiana, rendered July 26, 1882, in a certain suit in equity, in which said petitioner was complainant and the said Indianapolis and St. Louis Railroad Company and others were defendants, it obtained a decree against said Indianapolis and St. Louis Railroad Company for the payment of the sum of $664,874.70, besides costs, which decree remained unsatisfied and unreversed. This amount, it was claimed by the petitioner, was a lien upon the proceeds of the sale of the Indianapolis and

St. Louis Railroad, prior in equity to that of the bondholders secured by the second and third mortgages.

The indebtedness for which this decree was rendered arose under an agreement entered into between the petitioner and the Indianapolis and St. Louis Railroad Company on September 11, 1867, whereby it was provided that the Indianapolis and St. Louis Railroad Company should manage, operate, and carry on the business of that portion of petitioner's road known as its principal or main line, extending from Terre Haute, in the State of Indiana, to East St. Louis, in the State of Illinois, a distance of 189 miles, and of the Alton branch thereof, extending from Alton Junction, in the State of Illinois, to Alton, in said State, a distance of four miles, for the period of ninety-nine years from the 1st day of June, 1867; that said Indianapolis and St. Louis Railroad Company should pay annually during said term to the petitioner thirty per cent of the gross earnings of the said main line and Alton branch until such gross earnings for the year should amount to $2,000,000, and twenty-five per cent of any excess over $2,000,000 until the whole earnings for the year should amount to $3,000,000, and twenty per cent of any excess over $3,000,000 of gross earnings for such year; and, further, that the said payment should amount in each and every year to at least the sum of $450,000, which amount was agreed upon as a minimum rental, to be paid absolutely without reference to the percentage which it formed of the gross earnings of any year, and without leaving or creating any claim or charge upon the earnings of any future year. The petition further showed that at the time of the execution of the said operating contract, the Indianapolis and St. Louis Railroad was not built, and that the Indianapolis and St. Louis Railroad Company was organized and created for the express purpose of furnishing to the Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company and the Pittsburg, Fort Wayne and Chicago Railway Company a through line to the Mississippi River by means of its connection with the petitioner's road, the St. Louis, Alton and Terre Haute Railroad, under the foregoing contract, and that while the Indianapolis and St. Louis Railroad Company

nominally under that contract was the lessee of the petitioner's road, yet in fact it was leased and operated for the benefit of the other two companies named, who furnished the money to build the said Indianapolis and St. Louis Railroad, and who entered into a contract with the petitioner, guaranteeing performance of said agreement on the part of the Indianapolis and St. Louis Railroad Company, and who had entered into a contract between themselves for the management and operation of the continuous line of railroad from Indianapolis, in the State of Indiana, to East St. Louis, in the State of Illinois, including the Indianapolis and St. Louis Railroad and the petitioner's road. It was further alleged in the petition that the Pennsylvania Railroad Company, which, together with the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, were made defendants to the petition, had succeeded to the rights and obligations under these several contracts and arrangements of the Pittsburg, Fort Wayne and Chicago Railway Company; and that the Pennsylvania Railroad Company and the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company were equal owners of the capital stock of the Indianapolis and St. Louis Railroad Company, and that the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company was the holder, substantially, of all the second mortgage bonds of the Indianapolis and St. Louis Railroad Company.

The petition further alleged that the eastern terminus of the St. Louis, Alton and Terre Haute Railroad was the western terminus of the Indianapolis and St. Louis Railroad, the two thus forming a continuous line from Indianapolis to East St. Louis on the Mississippi River, the road of the petitioner being the only outlet for the Indianapolis and St. Louis Railroad west of Terre Haute; that a very large proportion of the earnings of the Indianapolis and St. Louis Railroad Company were derived from business received by it from the petitioner's leased line; and averred that the earnings of the leased road over and above the amount authorized to be retained by the Indianapolis and St. Louis Railroad Company for the purpose of operating the same at all times had been and were the property of the petitioner.

The petitioner further claimed that the rental for the use and occupation of said continuous line constituted a part of the operating expenses of the Indianapolis and St. Louis Railroad Company; that the operating contract was executed before any of the bonds of the Indianapolis and St. Louis Railroad Company were issued and sold; that it was the duty of the Indianapolis and St. Louis Railroad Company to pay all of its operating expenses, including the rental of the petitioner's road, out of its earnings before it paid any interest on said bonds; but that the said Indianapolis and St. Louis Railroad Company, instead of paying its operating expenses as thus defined, diverted and appropriated its earnings to improvements of its property in better equipment and new construction, and to the payment of interest upon its bonds, and neglected and refused to pay the rental accruing to the petitioner for which it had obtained a decree, as above stated. And the petition alleged that during the time the Indianapolis and St. Louis Railroad Company had been in possession of the petitioner's road the amount of such misappropriation and diversion of funds, that should have been applied to the payment of operating expenses, amounted to the sum of $1,000,000.

The petition further showed that on May 1, 1878, the Indianapolis and St. Louis Railroad Company made default in the payment to petitioner of the rental then due under the terms of said contract, and so continued to make default from and including April 1, 1878, up to and including October 26, 1878, during which time it was in possession and use of the leased road, receiving the profits and income thereof, and paid over no part of the gross earnings of said road to the petitioner whatever, but appropriated the whole of the same to its own use, thirty per cent whereof during said time amounted to the sum of $164,052.82, which, it was alleged, was appropriated by the Indianapolis and St. Louis Railroad Company to improvements, betterments, and new construction upon its own line of railroad, in the purchase of rolling stock and equipment, and in the payment of interest upon its bonds.

It was further alleged in the petition that when the Indianapolis and St. Louis Railroad Company took possession of the

leased road in 1867 it received from the petitioner supplies of the value of $91,860.05, which, by the terms of the lease, the lessee contracted and agreed to return or account for to the lessor at the termination of the lease; that said supplies had long since been consumed by the lessee; that by the terms of the decree and sale in the principal cause the lease had been assigned and transferred to the Indianapolis and St. Louis Railroad Company, and it was claimed that said amount was a charge upon the proceeds of the sale of the leased road in the possession of the court for distribution.

The petition therefore prayed for a decree awarding priority in payment in its favor out of the proceeds of the sale of the two sums of $664,874.70 and $91,860.05.

To this petition answers were filed by the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, and by the Pennsylvania Railroad Company, in which the allegations of the petition in regard to the diversion of the earnings of the St. Louis, Alton, and Terre Haute Railroad Company to the purposes of the Indianapolis and St. Louis Railroad were denied, as well as the general equity set up by the petitioner.

On June 27, 1884, the cause having been fully heard upon the petition, and the answers and proofs, a final decree was rendered awarding to the petitioner an amount found due to it for rental accrued while the road was in the possession of the receiver appointed under the foreclosure proceedings, and directing payment thereof; but so far as the petition sought to establish a claim for rental prior to the date when the receiver took possession of the property, as against the proceeds arising from its sale, and so far as it sought to recover the value of the supplies turned over to the Indianapolis and St. Louis Railroad Company in 1867, at the time of the execution of the lease, the petition was dismissed. It was from that decree that this appeal was prosecuted.

*Mr. John M. Butler*, with whom was *Mr. Joseph E. McDonald* on the brief, for appellants.

I. The St. Louis, Alton, and Terre Haute Railroad Company is entitled to payment of the amount equitably due for the use

of its railroad and franchises by the Indianapolis and St. Louis Railroad Company, as upon *quantum meruit*, regardless of the lease of September 11, 1867. *Thomas* v. *Brownville &c. Railroad*, 109 U. S. 522, 526; *Gardner* v. *Butler*, 30 N. J. Eq. (3 Stewart), 702, 724; *Wardell* v. *Union Pacific Railroad*, 4 Dillon, 330, 339; *S. C.* on appeal, 103 U. S. 651, 656; *Pennsylvania Co.* v. *St. Louis, Alton & Terre Haute Railroad*, 118 U. S. 290, 309, 318.

II.　The amount of compensation for the use of the railroad and franchises of the St. Louis, Alton and Terre Haute Railroad Company by the Indianapolis and St. Louis Railroad Company fixed by the lease of September 11, 1867, to wit: $450,000 per annum, in monthly payments of $37,500, is no more than a just and equitable compensation and should be allowed, as upon *quantum meruit*, regardless of the lease.

III.　The St. Louis, Alton and Terre Haute Railroad Company is entitled to payment, out of the proceeds of the sale of the railroad and franchises of the Indianapolis and St. Louis Railroad Company, of the full amount of the $664,874.70 decreed due to it from the Indianapolis and St. Louis Railroad Company by the decree of July 26, 1882, together with interest thereon from date of said decree, before any distribution of said proceeds of sale is made upon the second and third mortgage bonds, in preference to payment upon said second and third mortgage bonds.

*First.* Because the amount justly due for the use by the Indianapolis and St. Louis Railroad Company of the railroad and franchises of the St. Louis, Alton and Terre Haute Railroad Company is a part of the operating expenses of the Indianapolis and St. Louis Railroad Company. *Fosdick* v. *Schall*, 99 U. S. 235, 252; *Union Pacific Railroad* v. *United States*, 99 U. S. 402, 422; *Union Trust Co.* v. *Walker*, 107 U. S. 596; *Union Trust Co.* v. *Souther*, 107 U. S. 591, 595; *Miltenberger* v. *Logansport Railway*, 106 U. S. 286, 313.; *Sage* v. *Central Railroad Co.*, 99 U. S. 334, 336; *Burnham* v. *Bowen*, 111 U. S. 776. These authorities clearly decide the following points:

1. That all earnings are applicable, first, to operating ex-

penses until they are fully paid, and that there are no net earnings applicable to bond interest or improvement of the mortgaged estate while operating expenses remain unpaid.

2. That payment for the use of *rented track* is an operating expense, the same as payment for the use of rented cars, and payment for fuel, supplies and services of operatives.

3. That operating expenses incurred in keeping a railroad a "going concern," or in any other way tending to preserve the value of the mortgaged estate, are entitled to payment out of proceeds of sale in preference to mortgage bonds, even although the gross earnings are insufficient to pay all the operating expenses.

*Second.* The amount due to the St. Louis, Alton and Terre Haute Railroad Company for the use of its railroad, equipment and franchises by the Indianapolis and St. Louis Railroad Company should be paid out of the proceeds of sale in preference to the mortgage bonds, because it is a debt due to a connecting line. *Miltenberger* v. *Logansport Railway,* above cited; *Union Trust Co.* v. *Souther,* above cited; *Burnham* v. *Bowen,* above cited; *Union Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 434, 458.

*Third.* The amount equitably due to the St. Louis, Alton and Terre Haute Railroad Company for the use of its railroad, equipment and franchises by the Indianapolis and St. Louis Railroad Company ought to be paid out of the proceeds of sale in preference to payment of the mortgage bonds, because gross earnings, out of which this debt ought to have been paid, have been diverted to payment of bond interest, and to payment for new construction and improvements to the railroad of the Indianapolis and St. Louis Railroad Company. *Fosdick* v. *Schall,* 99 U. S. 255; *Miltenberger* v. *Logansport Railway,* 106 U. S. 311; *Union Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 457; *Burnham* v. *Bowen,* 111 U. S. 780; *Pennsylvania Co.* v. *St. Louis, Alton &c. Railroad,* 118 U. S. 290, 317, 318. If the law now firmly established by these decisions is to remain the law, these diverted gross earnings must be restored out of the proceeds of the sale, so far as may be necessary to fully pay the debts that ought to have been paid out

of the gross earnings so diverted. The St. Louis, Alton and Terre Haute Railroad Company asks payment out of proceeds of sale of the debt decreed due it by the decree of July 26, 1882, for the use of its railroad and equipment by the Indianapolis and St. Louis Railroad Company:

1. Because this debt is an operating expense of the Indianapolis and St. Louis Railroad Company, payable out of the gross earnings of the entire line from Indianapolis to St. Louis, — the said gross earnings being sufficient to pay all operating expenses, including this debt as an operating expense.

2. Because this debt is a debt due to a connecting line, and, in common with all other dues to connecting lines, is an operating expense of the Indianapolis and St. Louis Railroad Company.

3. Because gross earnings received by the Indianapolis and St. Louis Railroad Company have been by it diverted to the benefit of its bondholders to such amounts as would have been far more than sufficient to have paid this debt.

IV. The Cleveland, Columbus, Cincinnati & Indianapolis Railway Co., in claiming the application of all the remaining proceeds of sale to the payment of the second and third mortgage bonds in preference to the payment of the debt due to the St. Louis, Alton & Terre Haute Railroad Co. for the use of its railroad and equipment, does not stand before a court of equity in the position of an ordinary bondholder. The peculiar relations existing between the Cleveland, Columbus &c. Railroad Co. and the Indianapolis and St. Louis Railroad Co. greatly strengthened the equity in favor of the St. Louis, Alton & Terre Haute Railroad Co. in its claim for preference in payment over the second and third mortgage bonds. *Thomas v. Railroad Co.*, 101 U. S. 71, 86.

V. The St. Louis, Alton & Terre Haute Railroad Co. is entitled to payment of $164,052.82, together with interest thereon from October 26, 1878, — the same being part of the aggregate amount decreed due by the decree of July 26, 1882, — out of the proceeds of sale of the railroad and property of the Indianapolis and St. Louis Railroad Company, because the said $164,052.82, and interest thereon, *is trust fund money*

belonging to the St. Louis, Alton & Terre Haute Railroad Co., collected, withheld and appropriated to its own use and benefit by the Indianapolis and St. Louis Railroad Company.

As against the Indianapolis and St. Louis Railroad Company the decree of July 26, 1882, stands affirmed and remains in full force. As between the St. Louis, Alton & Terre Haute Railroad Company and the Indianapolis and St. Louis Railroad Company the lease of September 11, 1867, stands as a valid contract. *Penn. Co.* v. *St. Louis, Alton &c. Railroad,* 118 U. S. 318.

That rents definitely ascertained and specifically reserved by lease never become the property of the lessee, but vest directly in the lessor, and are simply held *in trust* by the lessee for the lessor, seems to be a well-established principle in law. *Moulton* v. *Robinson,* 7 Foster (N. H.) 551; *Hatch* v. *Hart,* 40 N. H. 91; *Daniels* v. *Brown,* 34 N. H. 454; *S. C.* 69 Am. Dec. 505; *Hart* v. *Baker,* 29 Ind. 200; *Lindley* v. *Kelley,* 42 Ind. 294; *Parker* v. *Garrison,* 61 Ill. 250, 254.

*Mr. Stevenson Burke* and *Mr. John T. Dye* for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

At the time of the execution of the lease in 1867 of the St. Louis, Alton and Terre Haute Railroad to the Indianapolis and St. Louis Railroad Company, the railroad of the latter company was not in existence. It was subsequently constructed in order to form the connection which would give to the parties in interest the desired through line from Indianapolis to St. Louis. The capital stock of the Indianapolis and St. Louis Railroad Company was owned substantially by the Pennsylvania Railroad Company and the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company in equal parts. A portion of the funds necessary to construct and equip the road was represented by bonds secured by mortgages. Of these there were three; the first mortgage was for $2,000,000, the second for $1,000,000, and the third for $500,000. The first mortgage bonds, prior to the foreclosure and sale, had

been sold in the market, and were outstanding. The sale was made subject to the continued incumbrance of that mortgage, and of the bonds secured thereby. The holders of these bonds have, therefore, no interest in this controversy.

The second and third mortgage bonds were originally taken to account by the two companies interested in the construction of the road, but, prior to the foreclosure and sale, had become substantially the property of the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, that company having acquired the entire interest of the Pennsylvania Railroad Company. As the owner of these bonds, the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company claims to be entitled to the whole amount of the proceeds of the sale of the road under the foreclosure, and is the only party in interest adverse to the petitioner.

The default in the payment of interest on the second and third mortgages dates from January 1, 1878. The decree of foreclosure finds the amount of interest in arrears on May 2, 1882, on the second mortgage bonds, to be $291,745.97, and the aggregate sum due on account of said mortgage, principal and interest, to be $1,197,745.97, with interest from May 2, 1882. The amount found due by the same decree, on account of the bonds secured by the third mortgage, including interest from January 1, 1878, is $699,164.76. The whole amount found due by the decree, including both sums, is $1,896,910.73, which is more than the amount of the proceeds of the sale of the road, which were $1,396,000.

Upon the bill of Hinman B. Hurlbut, as trustee, for the foreclosure and sale of the Indianapolis and St. Louis Railroad property, a receiver was appointed, and it was ordered that the St. Louis, Alton and Terre Haute Railroad Company should be entitled to require the payment of thirty per cent of the gross earning of its railroad to said lessor, according to the order of the court theretofore made and still in force in the suit of the St. Louis, Alton and Terre Haute Railroad Company against the Indianapolis and St. Louis Railroad Company, with the terms of which order the receiver was directed to comply. The order appointing the receiver also expressly reserved to

the court the right and power to make such orders and decrees touching the payment of the debts of the Indianapolis and St. Louis Railroad Company incurred in the management and operation of its railroad prior to the appointment of the receiver, as might be equitable and just.   The decree of foreclosure and sale also contained a clause reserving to the court the right, by subsequent order or orders, to distribute the proceeds of the sale of the railroad and property connected therewith, and to make such further order and decree in regard to the distribution of the proceeds of sale as might to the court seem equitable and just; and a reference was made to the master to hear evidence in support of all claims or indebtedness in behalf of any creditor of the defendant company, whether secured or not.

The Indianapolis and St. Louis Railroad Company, from the date of the lease in 1867, continued to pay to the St. Louis, Alton and Terre Haute Railroad Company the rental reserved by the terms of the lease, viz., thirty per cent of the gross earnings of the leased road in each year until April 1, 1878.  Prior to that time there had been no default in respect to the payment of the full amount of the rental as it accrued; the lessee ceased paying rent from that date.

On October 25, 1878, the St. Louis, Alton and Terre Haute Railroad Company filed its bill in equity in the Circuit Court of the United States for Indiana against the Indianapolis and St. Louis Railroad Company, to which also the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company and the Pennsylvania Railroad Company were made parties defendant.   The object of that bill was specifically to enforce the performance of the covenants contained in the 'lease on the part of the lessee and of the other defendants as guarantors. It was in that suit that the order was made November 30, 1878, requiring the Indianapolis and St. Louis Railroad Company to pay into court, on account of the rental due the lessor, monthly, on the 15th day of each month, thirty per centum of the gross earnings for the preceding month of the leased road, calculating the gross earnings which had accrued since October 26, 1878.

The final decree of the Circuit Court in that cause declared that the lease and operating contract of September 11, 1867, was a valid obligation upon all the parties thereto, and established the amount of the indebtedness of the Indianapolis and St. Louis Railroad Company on account of the minimum rent reserved by said lease to July 1, 1882, at the sum of $541,358.23 principal, and $123,516.47 interest, making in all the sum of $664,874.70. It also found that thirty per cent of the gross earnings of the leased line collected and received by the Indianapolis and St. Louis Railroad Company, and withheld by it from April 1, 1878, until October 26, 1878, amounted to $164,052.82, which was part of said aggregate amount found due. The decree further declared the liability of the Pennsylvania Railroad Company and of the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company as guarantors for their proportion of the said sum, and awarded payment accordingly.

From this decree appeals were taken and prosecuted to this court by the Pennsylvania Railroad Company and the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, the judgment in which was rendered at October Term, 1885, and is reported in 118 U. S. 290. It was there decided that the lease of 1867 was void for want of power on the part of the Indianapolis and St. Louis Railroad Company to enter into it, and that the guaranty of performance executed by the other defendant companies by reason thereof was also void. The decree of the Circuit Court was accordingly reversed, and the cause remanded with directions to dismiss the bill as to the Pennsylvania Railroad Company and the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company; but that part of the decree which required the Indianapolis and St. Louis Railroad Company to pay the amount found due as rent was left standing, as no appeal from it had been prosecuted by the Indianapolis and St. Louis Railroad Company. Pending that litigation, the intervening petition of the St. Louis, Alton and Terre Haute Railroad Company, now under consideration, was filed in the foreclosure suit, in which Hurlbut, as trustee, was complainant.

The propositions on which counsel for the appellant bases its right to the relief prayed for in the intervening petition, and which was denied by the decree, are stated by it as follows:

First.  That the petitioner is in equity entitled to just and fair compensation for the use of its railroad, equipment, and franchises as upon *quantum meruit*, even if the lease is entirely disregarded.

Second.  That the minimum rent of $450,000 per annum, in monthly payments of $37,500, is no more than just, fair, and equitable compensation for the use of the leased line upon *quantum meruit*.

Third.  That the petitioner is entitled to payment of the $664,874.70 decreed due it by the decree of July 20, 1882, with interest thereon, out of the proceeds of the sale of the railroad and property of the Indianapolis and St. Louis Railroad Company in preference to payment of the mortgage bonds:

1. Because it is an unpaid *operating expense of the Indianapolis and St. Louis Railroad Company*, there having been gross earnings abundant to pay all operating expenses, including rent of the leased line.

2. Because it is a debt justly due to the petitioner *as a connecting line*.

3. Because gross earnings lawfully applicable *only* to operating expenses, until every operating expense has been fully paid, have been diverted to the benefit of the bondholders of the petitioner in payment of bond interest, and in adding increased value to the mortgaged property by additions and improvements, to an amount sufficient to have paid the debt now due to the petitioner many times.

Fourth.  That the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, in resisting payment of the debt due the petitioner in preference to the payment of the second and third mortgage bonds, does not stand before a court of equity in the position of simply an ordinary bondholder; and that the peculiar relations existing between the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company and the Indianapolis and St. Louis Railroad Company, as disclosed by this litigation, greatly strengthen the

equity in favor of the petitioner in its claim for preference in payment over the mortgage bonds.

Fifth. That the petitioner is entitled to payment of $164,-052.82, with interest thereon from October 26, 1882, out of the proceeds of sale, because that amount is thirty per cent of the gross earnings earned on the track of the leased line from April 1, 1878, to October 26, 1878, and *is trust money reserved by the lease* belonging to the petitioner, collected, withheld, and wrongfully appropriated to its own use and benefit by the Indianapolis and St. Louis Railroad Company.

It may be admitted that the petitioner is entitled in equity to a just and fair compensation for the use of its railroad by the Indianapolis and St. Louis Railroad Company, without regard to the lease, as between it and the lessee, and also that the minimum rent of $450,000 per annum, in monthly payments of $37,500, *is no more than that just and fair compensation that the lessor company would be entitled to receive* for the use of its road upon a *quantum meruit.* As between the petitioner and the Indianapolis and St. Louis Railroad Company, the amount of the indebtedness on that account is conclusively established by the decree of July 26, 1882, which, as between these parties, stands unreversed and unsatisfied.

A different question, however, arises as between the petitioner and the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, as the owner of the mortgage bonds, for the satisfaction of which the Indianapolis and St. Louis Railroad has been sold. It remains, as between these parties, for the petitioner to establish that the debt to it of the Indianapolis and St. Louis Railroad Company, on account of this use and occupation, is a prior lien and charge upon the proceeds of the sale of the Indianapolis and St. Louis Railroad, entitled to preference over that of the second and third mortgages. Among the reasons urged in support of this preference are these, — because the arrearage is an unpaid operating expense of the Indianapolis and St. Louis Railroad Company; because it is a debt due to the petitioner as a connecting line; and because it consists of a portion of the gross earnings earned on the track of the leased line received by the Indianapolis and

St. Louis Railroad Company, and held by it as trust money in equity belonging to the petitioner. This last reason, as formally presented, is limited to $164,052.82, being thirty per cent of the gross earnings earned on the track of the leased line from April 1, 1878, to October 26, 1878, but is applicable as well to all other amounts received by the lessee of the gross earnings of the leased line which have not been accounted for.

But none of these reasons, standing by themselves, are sufficient. It is undoubtedly true that operating expenses, debts due to connecting lines growing out of an interchange of business, and debts due for the use and occupation of leased lines are chargeable upon gross income before that net revenue arises which constitutes the fund applicable to the payment of the interest on the mortgage bonds. But here there is no question in respect to current income. The fund in court is the proceeds of the sale of the property, and represents its *corpus;* and it cannot be claimed that ordinarily the unsecured debts of an insolvent railroad company can take precedence in the distribution of the proceeds of a sale of the property itself over those creditors who are secured by prior and express liens.

There are cases, it is true, where, owing to special circumstances, an equity arises in favor of certain classes of creditors of an insolvent railroad corporation, otherwise unsecured, by which they are entitled to outrank in priority of payment, even upon a distribution of the proceeds of a sale of the body of the property, those who are secured by prior mortgage liens. Illustrations and instances of these cases are to be found in *Fosdick* v. *Schall*, 99 U. S. 235; *Miltenberger* v. *Logansport Railway Co.*, 106 U. S. 286; *Union Trust Co.* v. *Souther*, 107 U. S. 591; *Burnham* v. *Bowen*, 111 U. S. 776; *Union Trust Co.* v. *Illinois Midland Railway Co.*, 117 U. S. 434; *Dow* v. *Memphis and Little Rock Railroad Co.*, 124 U. S. 652; *Sage* v. *Memphis and Little Rock Railroad Co.*, ante, 361; and *Union Trust Co.* v. *Morrison*, ante, 591. The rule governing in all these cases was stated by Chief Justice Waite in *Burnham* v. *Bowen*, 111 U. S. 776, 783, as follows: "That if current earnings are used for the benefit of

mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use." There has been no departure from this rule in any of the cases cited; it has been adhered to and reaffirmed in them all.

Admitting, therefore, that the reasonable rent of the leased line accruing to the petitioner was a proper charge upon the gross income of the Indianapolis and St. Louis Railroad Company, as a part of its current operating expenses, before any net income could arise applicable to the payment of the interest on the mortgage bonds, it must still be shown, to entitle the petitioner to the relief prayed for, that the arrearage due on account thereof has arisen by the diversion and misappropriation of the fund that ought to have been applied to its payment to the use and benefit of the mortgage bondholders. Counsel for the petitioner undertake to do this, and insist that upon the proofs in this case it satisfactorily appears that such a diversion and misappropriation have taken place to its injury and to the advantage and benefit of the bondholders claiming the fund in court for distribution.

This diversion and misappropriation are alleged to have occurred in two ways: 1st, by the payment of the interest on the mortgage bonds out of earnings which should have been paid to the petitioner on account of rent due to it as an operating expense; and, 2d, by the application of earnings to permanent improvements and betterments of the Indianapolis and St. Louis Railroad property, which have increased the value of that property as a mortgage security; an increased value which, it may be very fairly presumed, is represented in the proceeds of its sale.

The fact in issue, it is claimed, is shown by an exhibit, which in tabular form contains a statement of the earnings, expenses, rental, and interest on bonds of the Indianapolis and St. Louis Railroad Company, including the leased line as one of its divisions, from the date of the commencement of operations under the lease in 1867 to May 23, 1882. That statement shows : Gross earnings, $26,868,252.31; operating ex-

penses, including taxes, $19,417,078.26; leaving as net earnings, $7,451,174.05. During the same period the amount of rental paid for the leased lines was $6,464,869.19, and during the same period interest paid on bonds, $2,234,396.62, showing as the result of the operations for the entire period a deficit of $1,248,091.76. It thus appears that the payments made on account of the various items mentioned exceed by that sum the entire gross earnings received by the lessee from its own and the leased line. But inasmuch as during this period $2,234,396.62 out of the gross earnings were paid on account of interest on bonds, being $986,304.86 more than the entire apparent deficit, the inference is drawn that the deficit has arisen in consequence of the payment of interest on bonds, more than sufficient, if they had been so appropriated, to have paid the entire rental including the arrearage now due. This, it is claimed, establishes the fact to be proved, that gross earnings, which should have been applied to the payment of rent, have been diverted by the lessee to the payment of interest on bonds.

This statement, however, is deceptive. From the beginning of operations under the lease in 1867 until April 1, 1878, the Indianapolis and St. Louis Railroad Company paid in full, as it accrued, the whole amount of the rental called for by the lease. During that period, the lessee, being in no default at any time on account of rent, had a legal right to appropriate any surplus of its gross earnings to the payment of interest on bonds, or for the improvement and additional equipment of its road. It was not bound to accumulate, out of the surplus of gross earnings, prior to 1878, a fund to meet possible contingencies in respect to rent that might arise after that date. The petitioner, therefore, has no right to complain of any appropriation of the earnings of the leased line during the period in which it received the full amount due to it.

If now we turn to a statement of a similar account, beginning in 1878, when the default in the payment of interest began, to the close of the period, May 23, 1882, we are furnished with the following figures: Gross earnings, $7,443,894.-43 ; operating expenses, including taxes, $6,253,819.53 ; leav-

ing net earnings, $1,190,074.90. During the same period there was paid on account of rent of the leased line to the petitioner $1,450,336.67, making a deficit of $260,261.77, without reference to anything paid during that period on account of interest on bonds. That is to say, during the period in which the arrearage on account of rent accrued, there was paid out on account of rent $260,261.77 in excess of the entire earnings of the whole line, after deducting the ordinary expenses of operation. During the same period there was paid on account of interest on bonds the sum of $490,105 making the entire deficit during that period $750,366.77. But it is admitted that during the same period the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company and the Pennsylvania Railroad Company made advances in cash to the Indianapolis and St. Louis Railroad Company to the amount of $510,306.-24, a sum greater than the whole amount of the interest paid during the same period on bonds. Even if we should treat the payment on account of interest on bonds during that period of $490,105 as taken from the earnings, which should have been applied to the payment of the rental, it is to be considered that the payment was made on account of the interest accruing during that period on the first mortgage bonds alone. No interest whatever was paid from January 1, 1878, on account of the interest accruing on the second and third mortgage bonds. It cannot be said that the application of earnings to the payment of the interest on the first mortgage bonds is chargeable to the holders of the second and third mortgage bonds ; the latter alone are interested in the fund for distribution. That fund, in the sense of the rule sought to be applied, cannot be said to have been benefited by the payment to other bondholders from the gross earnings applicable to the payment of the rent. The equity of the petitioner, if in fact it exists, is against the holders of the first mortgage bonds, who have actually received the money to which it claims to be equitably entitled.

It is further insisted, however, on behalf of the petitioner, that there has been a diversion of earnings to its detriment by payments made for additions and improvements to the

mortgaged property during the years 1878, 1879, 1880, and 1881, amounting to $256,501.05; but if we exclude from the account the payments made during that period on account of interest on the first mortgage bonds, as should be done, the amount of these betterments of the mortgage security is much more than made up by the cash advances during that period made by the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company and the Pennsylvania Railroad Company, which, as we have stated, were $510,306.24.

A special equity is urged as to the unpaid rent of the leased line for the seven months from April 1 to November 1, 1878, during which nothing whatever was paid on that account, amounting, as found by the decree of July 26, 1882, to $164,052.82, on the ground that the gross earnings of the leased line during that period were received by the Indianapolis and St. Louis Railroad Company clothed with a trust, and were diverted from their legitimate application to the benefit of the bondholders. As we have already stated, no equity can arise upon the alleged breach or trust unless the second and third mortgage bondholders participated in it, or have been benefited by it. The alleged diversion of this amount is covered by the statements that have been already adverted to. It consists in payments on account of interest on the first mortgage bonds, which must be excluded from the account for reasons already given, and payments made on account of new construction, additions, new equipment, and improvements, more than covered by the cash advances made by the owners of the second and third mortgage bonds. An effort is made in the argument to swell the amount chargeable to permanent improvements by pointing out that from January 1, 1881, to May 23, 1882, more than all of the gross earnings of the entire line were charged up to the operating expense account, without counting anything for rent of the leased line as an operating expense. The witness who tabulated the schedules in which these statements appear stated that, during the months covered by these charges for excessive operating expenses, large improvements were being made to the property, but no details were brought out on the exami-

nation, and the witness qualified his statement by saying that he did not mean to be understood that the improvements were more than such as were necessary to the proper repair and restoration of the property. We cannot assume by way of conjecture or mere inference that the items referred to were not properly charged as operating expenses. On this branch of the case we conclude that the petitioner has failed to establish any diversion and misappropriation of the earnings applicable to the payment of rent of the leased line to entitle him in equity to charge the fund in court for the payment of the arrearage in preference to the second and third mortgage bondholders.

Independently of the equity growing out of the alleged diversion and misappropriation of earnings properly applicable to the payment of rent, it is claimed on behalf of the petitioner that it has an equitable right to a priority of payment out of the fund in court growing out of the peculiar relations existing between it and the Cleveland, Columbus, Cincinnati and Indianapolis' Railway Company and the Indianapolis and St. Louis Railroad Company, as disclosed in the transactions out of which this litigation has grown. It is alleged, in substance, that the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company is the real debtor for this arrearage of rent; that it with the Pennsylvania Railroad Company were in fact the owners of the Indianapolis and St. Louis Railroad, which was built with their money, and for the promotion of their interests, in order, by means of the lease of the petitioner's road, to create a through line from Indianapolis to St. Louis for business between the East and the West, the establishment and operation of which have contributed largely to swell the business upon their own previously existing lines. Having thus induced the petitioner to enter into the arrangement for their benefit, and having secured and actually enjoyed its advantages and profits, the argument now is that good faith, by an equitable estoppel, forbids the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company from now asserting a claim which will deprive the petitioner of the compensation agreed to be paid

for the use of its road.   But this is the very equity which the petitioner sought to enforce by its bill filed October 25, 1878, in which it sought to obtain a decree against its lessee and the guarantors in the lease for the specific performance of the covenant to pay the reserved rent.  In that bill reliance was placed, it is true, upon the express covenants which were held finally to be void; but every equitable ground upon the existing facts was invoked in support of the validity of the covenants.  The facts supposed to constitute the equity now insisted on were urged then as sufficient to support the obligation based upon the terms of the operating contract and lease.   If this equity was not sufficient then to sustain an express promise to pay the rent, it certainly is not strong enough now to justify a decree for its payment standing by itself.   To enforce the present claim of the petitioner on this ground would be simply to reinstate as valid the covenants of the lease and guaranty which between the same parties have already been finally decided to be void.

It has already been stated that no default occurred in the payment of the rent by the Indianapolis and St. Louis Railroad Company until April 1, 1878.   After that default occurred, no step was taken by the petitioner by any legal proceeding to forfeit the lease and re-possess itself of its road. Nothing was done until the filing of its bill, October 25, 1878, to compel the specific performance of the covenants of the lease and operating contract, when the order was made requiring payment to it, pending the proceeding, of thirty per cent of the gross earnings of its road; and an analysis of the tabular statements, already referred to as in evidence, shows that the arrearage of rent, for which payment is now sought, can be recovered only upon the basis of the minimum rental fixed by the lease by the enforcement of the covenants of guaranty declared to be void.

The minimum fixed by the lease for the rental of the leased line from June 1, 1867, to May 23, 1882, at $450,000 per annum, is $6,750,000; thirty per cent of the gross earnings of the leased road for the same period is $6,031,465.61, being less than the guaranteed rent by $718,534.39.   In point of fact, the

condition of the petitioner, upon the facts as they now stand, without payment of any arrearage of rent, is demonstrably better than it would have been if no lease had been made, and the road had been operated by its own proprietors, independently but as part of a connected through line. This is shown by the fact that the lessor received as rent during the whole period of the lease $6,464,869.19, while the total net earnings of the leased property during the same period are shown to have been only $5,290,783.02. Presumably these net earnings are as large as they would have been if the road had been operated by its own proprietor. The volume of its business, and the corresponding amount of its gross receipts, were certainly swelled beyond what they would have been if the Indianapolis and St. Louis Railroad had not been built, or had not been operated in connection with it. It follows, therefore, upon the basis of the figures shown in the proofs, that the lessor has actually received, since the lease was made, in excess of the entire net earnings of the leased property, $1,174,086.17. Indeed, it is further shown, that during the period commencing with 1878, when the default began, the net earnings of the entire line, including the Indianapolis and St. Louis Railroad, as well as the leased road, amounted to $1,190,074.90, and that during the same period the lessor received on account of rent $1,450,336.67, being in excess of the net earnings of the two roads.

Upon these facts, we are unable to discover any equitable ground for the relief prayed for by the petitioner.

*The decree of the Circuit Court is, therefore, affirmed.*