## Barstow *v.* Railway Co.

### Opinion delivered February 18, 1893.

*Railroad mortgage—Foreclosure—Preferences.*

> Upon foreclosure of a mortgage upon the road bed and franchise of a railroad, no preference will be given to a claim for work of original construction done for the railroad after the mortgage was executed.

Appeal from Jefferson Circuit Court in Chancery.

JOHN M. ELLIOTT, Judge.

*John McClure* and *Austin & Taylor* for appellants.

*Morris M. Cohn* for appellee, E. L. Craw.

*Bell & Bridges* and *W. P. & A. B. Grace* for appellees.

JOSEPH W. MARTIN, Special Judge. In the year 1885, the Pine Bluff, Monroe & New Orleans Railway Company executed a mortgage to the Farmers' Loan & Trust Company, as trustee, to secure certain first mortgage bonds to be issued by said railway company. On April 23, 1888, Amos C. Barstow, the holder of one hundred and fifty nine of said bonds of one thousand dollars, all that had been issued, brought a suit for foreclosure of said mortgage, and, on the 15th day of August, 1888, all parties in interest being before the court and consenting thereto, a decree was entered for the sale of the road, its property and franchises, on the first day of September thereafter. The sale was accordingly made on that day, and the property was bought in by J. R. Campbell, presumably for Barstow, for the sum of $90,000.

Prior to this decree and sale, various parties had intervened and set up claims against the railway company and Barstow, which they asked to have allowed and paid out of the proceeds of such sale.

By agreement of all parties, however, the court made an order providing that the claims of the interveners should all be tried at the then next succeeding September term, 1888, of the court, or as soon thereafter as practicable, and further providing that the sale of the road should not be delayed if Barstow should file in the court a bond with security for the satisfaction of such claims as should be finally allowed by the court.

On the 8th day of September, 1888, the bond was filed by Barstow with V. D. Wilkins as his security. And thereupon on that day the sale was duly confirmed, the receiver discharged and ordered to turn over the road to the purchaser, and all that was then left of the original foreclosure suit was the contest over these interventions.

The litigation over the interventions resulted in a trial on the 26th day of June, 1890, and final decree and judgments against Barstow and Wilkins on five of the claims presented. From these judgments appeal is taken by Barstow and Wilkins.

We pass by, as not material upon the disposition of the cases made by this court, some of the interesting legal questions ably presented by counsel in their briefs, and take up in their order the claims of the interveners and consider them as they were submitted and treated by the parties and tried by the court below, as upon issues regularly joined as to their correctness and validity against Barstow and Wilkins, the appellants here.

The five judgments appealed from are as follows :

"It is therefore considered, adjudged and decreed, by the court, that Edward L. Craw do have and recover of and from Amos C. Barstow, as principal, and the said V. D. Wilkins, as his surety, the sum of $16,657.35, as principal, and the further sum of $1738.52, interest thereon to this date, and that he have execution therefor, as at law.

" It is further considered and decreed, by the court, that the said Charles M. Neel do have and recover of and from the said Amos C. Barstow, as principal and V. D. Wilkins, as his surety, the sum of $6250, together with interest thereon from August 6, 1887, to this date, amounting to the further sum of $1375, and that he have execution therefor, as at law."

"It is further considered that the interveners, M. L. Bell, C. M. Neel, Jr. and Riley M. Neel, do have and recover of and from said Amos C. Barstow, as principal, and V. D. Wilkins, as his surety, the sum of $5000, with interest to date, amounting to the further sum of $460, and that they have execution, as at law."

"It is further considered and decreed that the said White, as administratrix of David C. White, deceased, do have and recover of and from the said Amos C. Barstow, as principal, and the said V. D. Wilkins, as his surety, the sum of $416, and the further sum of $66.55 for interest thereon, and that he have execution, as at law."

"It is further considered and decreed, by the court, that the said Frank G. Bridges do have and recover of and from the said Amos C. Barstow, as principal, and the said V. D. Wilkins, as his surety, the sum of $103.75 for his debt, and the further sum of $7.75 for interest thereon to date."*

The last claim we have to consider is that of D. C. White. It is of a very meritorious character, being for cutting down and clearing away timber from the road for *original construction* of the road, and of permanent value and benefit to the road.

But the authorities exclude such claims from the preferences given on foreclosure of a prior land mortgage. 19 Am. & E. Enc. of Law, p. 758, and note 3.

In *Toledo Ry. Co.* v. *Hamilton*, 134 U. S. 296, the court, by Judge Brewer, makes a most instructive review of the authorities on the subject. "It is true," he says, "cases have arisen in which, upon equitable reasons, the priority of a mortgage debt has been displaced in favor

---

*So much of the opinion as relates to the first, second, third and fifth judgments above set out is, with the consent of the judge who delivered the opinion, omitted, as relating to matters of fact not of general interest. (Reporter.)

22

of even unsecured subsequent creditors." "But those principles have no application here. The work which Hamilton did was in original construction, and not in *keeping up*, *as a going concern*, *a railroad already built*. The amount due him was no part of the current expenses of operating the road. * * * The equitable principles upon which the decisions rest, applying to the payment, out of the proceeds of the sale of railroad property, of such debts for operating expenses and necessary repairs, are not applicable to claims such as the present, accrued for the original construction of a railroad while there was a subsisting mortgage upon it." * * * We are not aware of any well considered adjudged case which, in the absence of a statutory provision, holds that unsecured floating debts for construction are a lien on a railroad superior to the lien of a valid mortgage duly recorded, etc. The authorities are all the other way." *Fogg* v. *Blair*, 133 U. S. 534.

In *St. Louis, etc. R. Co.* v. *Cleveland, etc. Ry.* 125 U. S. 658, the court, in discussing the question of allowance of claims in foreclosure suits, after citing and reviewing numerous decisions, say : " The rule governing in all these cases was stated by Chief Justice Waite in *Burnham* v. *Bowen*, 111 U. S. 776, as follows : ' That if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use.' "

The doctrine of all the cases is that for the *current running expenses*, those outlays for necessary employees, repairs of machinery and road, fuel for engines and all such incidental expenditures as are necessary to keep the road as a going concern, the current receipts must be first applied in payment, and if this fund has in any measure been improperly diverted to the payment of any

part of the mortgage security, then there arises an equity to have a restoration of this diverted fund, and to that extent the creditor, even though he be unsecured, if his claim belongs to this favored class, may have his debt, to the extent of such diversion, paid out of the proceeds of the foreclosure suit and sale. The idea being that the mortgage creditor is entitled to payment in the first instance of only the net gainings of the road, the actual running expenses having the first right to be paid; and hence if any part of the current earnings be paid to the bond creditor, leaving unpaid a current expense claim, this would be in the first instance an improper appropriation of so much of the current earnings, and the bond creditor to get his foreclosure must return this sum to its proper fund. But such rule does not apply at all to debts of *original construction*. These debts are supposed to be paid out of the fund arising from original sale of stock and bonds and have no claim upon the current earnings of the road, through which alone the equities of preferred creditors are reached.

Having examined all the claims of interveners and finding none of them sustained, the decree and judgment of the court below is reversed as to each and every one of said claims appealed from, and the suits of the interveners dismissed.

Hemingway, J., did not sit in this cause.