CENTRAL TRUST CO. OF NEW YORK v. CHARLOTTE, C. & A. R. CO. et al. (WYLIE, Intervener).

(Circuit Court, D. South Carolina. January 5, 1895.)

RAILROAD FORECLOSURE—CLAIMS ENTITLED TO PREFERENCE—RENT OF LEASED LINES.

The L. R. Co. was leased to the C. R. Co., which undertook to pay, as rent, the coupons on certain bonds of the L. R. Co. The lease created no lien on the property of the lessee company for the rent. After the making of the lease, the C. R. Co. mortgaged its road, to secure an issue of bonds. Suit was afterwards brought to foreclose this mortgage, and a receiver of the property of the C. R. Co. appointed, at a time when that company was in default in payment of certain coupons of the L. R. Co., and during such default had paid certain coupons on its own bonds, secured by the mortgage. The receiver refused to operate the leased line, and did not take possession thereof. The C. R. Co. having been sold, a holder of bonds of the L. R. Co. applied for payment, out of the purchase money, of the coupons which were due when the C. R. Co. went into the hands of the receiver. Held, that such coupons, as rent of the leased road, did not form part of the operating expenses of the road, and were not entitled to priority over the lien of the mortgage.

This was a suit by the Central Trust Company of New York against the Charlotte, Columbia & Augusta Railroad Company and

others for the foreclosure of a mortgage. After a sale of the road, Joseph Wylie intervened, by a petition, asking payment of certain claims. The cause was heard upon a motion by complainant to strike the petition from the files.

J. S. Muller and S. W. Melton, for petitioner.
Henry Crawford, for mortgage trustees.

SIMONTON, Circuit Judge. This case comes up on a motion to strike from the files the petition in this case, and to set aside the order requiring respondents to answer thereto. The petition was filed in the main cause by a bondholder of the Chester & Lenoir Narrow-Gauge Railroad Company, on behalf of himself and all other holders of coupons of mortgage bonds of the said narrow-gauge railroad company, maturing January 1, 1893, who may come in, etc. He avers in his petition: That the said Chester & Lenoir Narrow-Gauge Railroad Company, a corporation, on 22d September, 1882, executed a lease for 99 years, of all of its property and franchises, to the Charlotte, Columbia & Augusta Railroad Company, another corporation. One covenant by way of payment of the rents thereon reserved was that the lessee company would pay the interest on the mortgage bonds of the lessor company then outstanding. Among these were the bonds whose coupons he holds. That the lessee entered under this lease, and operated the leased railroad until 1st December, 1893, when it refused longer to retain possession of it, and tendered it back to the lessor, and then abandoned it, so that the lessor was compelled to retake possession of the leased premises. That recently the Charlotte, Columbia & Augusta Railroad has been sold, under the decree of this court, foreclosing a mortgage securing the first consolidated bonds of the said last-named railroad company, with a proviso in the decree that all such claims as may be decreed by the court to be prior in lien or equity to the lien of the mortgage foreclosed in said suit shall be paid out of the proceeds of such sale, in priority to said consolidated bonds. That the rent of this road leased to the Charlotte, Columbia & Augusta Railroad Company, accruing from time to time in the shape of maturing coupons on the bonds of the class held by petitioner, was a part of the operating expenses of the Charlotte, Columbia & Augusta Railroad Company, and as such entitled to be paid out of current income, prior to the interest on its bonded debt. That coupons on these mortgage bonds of the Chester & Lenoir road, maturing January 1, 1893, were not paid, in all $12,250, and have not been paid, but that the current earnings of the Charlotte, Columbia & Augusta Railroad Company, applicable thereto, were diverted to pay coupons of the consolidated bonds of the last-named company, maturing at that time, to the amount of $15,000. The prayer is that this diversion be now corrected, and the moneys diverted be paid out of the proceeds of sale.

The respondents, the Central Trust Company of New York, upon being served with a copy of the petition, come in and move to strike it from the files, and to vacate the rule to show cause, on four

grounds: (1) That the petitioner, one of several bondholders, has no right to file this petition, as he neither alleges nor shows any request to the trustee of the mortgage to institute the proceedings, or any refusal on the part of the trustee to do so. (2) That the petitioner fails to show that there are any moneys or funds in court, or in the hands of the receivers, from which the coupons mentioned in the petition can be paid. (3) That it appears from the petition and the record in this cause that the coupons mentioned in the petition have no priority, and are not entitled to any priority, over the lien of the first consolidated mortgage of the Charlotte, Columbia & Augusta Railroad Company, foreclosed in this suit. (4) That the petitioner has shown no right to intervene.

This motion is in the nature of a demurrer, based on the whole record. To understand the case fully, certain facts must be noted which are in the record. The Richmond & Danville Railroad Company, a great railroad system, was put into the hands of receivers, by original proceedings in the circuit court of the United States for the Eastern district of Virginia, and by auxiliary proceedings in other districts, including the circuit court of this district. It owned, as a part of its system, a lease for 99 years of the Charlotte, Columbia & Augusta Railroad and its leased lines, the Chester & Lenoir Narrow-Gauge Railroad being one of these leased lines. In July, 1893, the main cause in which this petition was filed was brought in this court by trustees of a mortgage on the Charlotte, Columbia & Augusta Railroad, dated in 1883. The bill sought the foreclosure of that mortgage, and a sale of the property of the Charlotte, Columbia & Augusta Railroad, no claim being made as to the leased lines of lien or otherwise. Receivers were appointed under these proceedings, who took charge of the Charlotte, Columbia & Augusta Railroad only, and who refused to operate the leased lines. A decree was taken under which the property of the Charlotte, Columbia & Augusta Railroad was sold, which sale did not refer to or include any interest in the leased lines. The money in the hands of the court is derived from this sale only.

The first ground on which the motion of the respondents is based is the right of the petitioner to maintain his petition on his own behalf, or on behalf of holders of bonds in like plight with him who shall come in, etc. The position is that the suit should be in the name of the trustee of the mortgage, in the absence of any showing of his refusal or neglect or default. The trustee holds the mortgage for the common benefit of all the bondholders and for their security. To any proceeding seeking to enforce the mortgage he is the proper party in promoting it, and, if he does not appear, his absence must be accounted for by a refusal or neglect on his part to do his duty, or by his default or misconduct. But the position of the petitioner is this: He is proceeding on his coupons, and he produces a promise on the part of the Charlotte, Columbia & Augusta Railroad Company, under its lease from the Chester & Lenoir Narrow-Guage Railroad Company, to pay to the bondholders the coupons on their bonds as they mature. He contends that this gives to each coupon

holder a right to sue.     He sustains his position with a wealth of authorities to the effect "that, when one person makes a promise with another for the benefit of a third, that third person may maintain an action upon it against the promisor in his own name.". Brown v. O'Brien, 1 Rich. Law, 268; Schermerhorn v. Vanderheyden, 1 Johns. 140; Thompson v. Gordon, 3 Strob. 196.     No further discussion of this point is needed, as the importance of this case calls for a decision of it on its merits.

Passing by this preliminary question, and coming to the merits of the case, the petitioner alleges that the rent of this leased railroad, accruing from time to time, in the shape of maturing coupons on its mortgage debt, was a part of the operating and current expenses of the lessee railroad, and, as such, entitled to payment out of its earnings and income, in priority to the payment of principal or interest of its own mortgage debt; that the payment of coupons on the bonds of the Charlotte, Columbia & Augusta Railroad Company, maturing 1st January, 1893, the coupons on the bonds of the lessor road being unpaid, created a diversion; that now this diversion should be corrected by requiring payment of the pretermitted coupons out of the proceeds of sale of the Charlotte, Columbia & Augusta Railroad. which has been sold for the foreclosure of the mortgage securing the debt whose coupons have thus been improperly paid.

The covenant by the lessor in the lease to the Charlotte, Columbia & Augusta Railroad Company is in these words:

"And the said party of the second part, in consideration of the letting and demising as aforesaid of all the above-described railroad, property, and franchises, with their appurtenances, doth hereby covenant and agree to and with the said party of the first part that they, the said party of the second part, will assume upon themselves the payment of, and will pay, directly to the stockholders of said the Chester and Lenoir Narrow-Gauge Railroad Company, or to their treasurer or agent, annually, a sum equal to an annual dividend of one and one-half (1½) per centum upon the par value of the capital stock of said the Chester and Lenoir Narrow-Gauge Railroad Company; such payments to be made semiannually, in advance, from the date of the transfer of the railroad, property, and premises hereinbefore described and set forth; also, to assume the payment, by renewal or otherwise, of the mortgage bonds of said the Chester and Lenoir Narrow-Gauge Railroad Company; provided, however, that, if the same be paid not by renewal, then the amount of said mortgage bonds shall become a debt due to the said party of the second part by the said party of the first part, which debt shall be secured by a mortgage of all the railroad, property, and franchises hereinbefore described; also, to pay the interest on the mortgage bonds of said the Chester and Lenoir Narrow-Gauge Railroad Company now outstanding, or that may hereafter be issued, regularly, as the coupons attached to said bonds shall mature."

It will be observed that the covenant of the lessee is the consideration for the letting of the road for 99 years.     It contains three items, —a dividend to stockholders of a fixed sum semiannually; the assumption of the payment of the mortgage debt; and, as a corollary for this, the payment of the coupons on this debt as they mature. No allusion whatever is made to current earnings.     No percentage of them is payable to the lessor, as in St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 1011; but it is a promise to pay certain moneys, and to do certain things, absolutely

and at all events. This is a contract between the lessor and lessee upon the responsibility of the latter, secured by no lien, subject to all the contingencies of business. After this contract was made, the lessor company, for a present valuable consideration, gave a lien, by way of mortgage of its own property, to the complainant in this case. This was recorded, and gave a paramount lien. Does this open contract, without lien, displace the recorded lien, which gave a vested right? The language of the supreme court of the United States in Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, must be borne in mind in considering this question.

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because, in a few specified and limited cases, this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens."

The petitioner claims that these payments on this lease were a part of the operating expenses of the Charlotte, Columbia & Augusta Railroad, and as such they are entitled to the equity established, first, in Fosdick v. Schall, 99 U. S. 235, and confirmed by a long line of subsequent decisions of the supreme court of the United States. See cases collected in St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S., at page 673, 8 Sup. Ct. 1011. The doctrine is this: Railroads are of great public benefit. They are clothed by the public with valuable franchises. These franchises are bestowed upon them in order to promote prompt and easy communication between the several portions of this country. To maintain and preserve its usefulness, the railroad must be kept a going concern. Whatever expenditures are absolutely necessary to this end are always protected by the courts of equity, even against vested liens when the latter seek the aid of that court. In effect, the holders of these liens take them subject to this equity. But it is not every expenditure made by a railroad company in aid of its operations, nor every contract extending and widening its field of operations, which is entitled to this equity. The debt incurred or the expenditure made must be necessary to keep the railroad a going concern,—such a debt or such an expenditure as without it or one like it, the road would

cease its operations.   Thomas v. Car Co., 149 U. S. 111, 13 Sup. Ct. 824.   The language of Fosdick v. Schall is "necessary operating and managing expenses, proper equipment, and useful improvements." In Kneeland v. Trust Co. the language is "a few specified and limited cases."   In Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 480, the circuit court of appeals discuss an allowance made by the court below for steel rails furnished the railway company, for which notes had been given, payable out of earnings.   They reversed the court below, and declared the claim not to be within Fosdick v. Schall.

"The claim," says the court, "is quite different from their ordinary and necessary current expenses of operating a railroad, contracted but a short time before the receivership, and which, by the sudden action of the court, are left unpaid."

The court go on:

"The supreme court has recently, in Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, indicated the narrow limits to which an equity court should confine itself in allowing any unsecured claim to displace vested contract liens. Wages due employés, current operating expenses, current balances of ticket and freight money arising from indispensable business relations, and similar current debts accruing within 90 days, are recognized as among the limited class of claims which, in its discretion, the court may allow to have priority."

The learned counsel for the petitioner insist that the consideration for the lease must be treated as rental, and that the rental of a leased line is a part of the operating expenses of the road.   The rental under a lease is no more a part of the operating expenses of a railroad than the rental for cars and locomotives in actual daily use on the road.   Yet from Fosdick v. Schall, 99 U. S. 235,—the case which recognized and enforced this equity relied on, down to Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, the last reported case on this doctrine the rental of cars necessary to operate the road for six months prior to the receivership was disallowed as a claim on the fund.

In Railroad Co. v. Humphreys, 145 U. S., at page 102, 12 Sup. Ct. 787, it was sought to obtain payment of rent due on a leased road from the corpus of property sold by the court.   The supreme court state the question:

"Were the petitioners entitled to the relief they prayed, upon any ground heretofore recognized as justifying such an imposition upon the corpus of the property in priority to the claims of lien creditors?"

In refusing the relief, the court again declares what classes of debts are protected under Fosdick v. Schall.   The court says:

"In Morgan's L. & T. Railroad & Steamship Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 197, 11 Sup. Ct. 61, we said that the doctrine of Fosdick v. Schall, 99 U. S. 235, is, 'that a court of equity may make it a condition of the issue of an order for the appointment of a receiver that certain outstanding debts of the company shall be paid from the income that may be collected by the receiver or from the proceeds of sales; that, the property being in the hands of the court for administration, as a trust fund for the payment of incumbrances, the court, in putting it in condition for sale, may, if needed, recognize the claims of material men and laborers, and some few others of similar nature, accruing for a brief period prior to its intervention, where current earnings have been used by the company to pay mortgage debt or improve the property, instead of to pay current expenses, under circumstances raising

an equity for their restoration,—as, for instance, where the company, being insolvent and in default, is allowed by the mortgage bondholders to remain in possession and operate the road long after that default has become notorious, or where the company has been suddenly deprived of the control of its property,—and the pursuit of any other course might lead to cessation of operation.' "

See, also, United States Trust Co. v. Wabash W. Ry. Co., 150 U. S. 289, 14 Sup. Ct. 86.

The broad principle is stated in New York, P. &. O. R. Co. v. New York, L. E. & W. R. Co., 58 Fed. 281:

"Rent accruing before the receivership * * * is not entitled to any priority. It is an unsecured liability, and must rank along with all other claims on the final distribution of the assets of the lessee company."

The only case in the federal court which seems to adopt a contrary doctrine is St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 1011. In that case the leased line was a part of the main trunk, over which all the business of the road passed, and by which alone the line reached the Mississippi. The terms of the lease were payment of 30 per cent. of the gross earnings of the leased line. The facts of the case did not bear out the contention that these earnings had been diverted, nor enable the court to pass upon the contention that the gross earnings of the leased road were a fund impressed with a trust to pay 30 per cent. of them to the lessor. In consequence of this, the case gave no preference to the claim for rent of this leased line. All that the justice says on the preference of rent is obiter dictum. At all events, it is in conflict on this point with every other case on the subject, and for this reason, apparently, Mr. Justice Brewer alludes to it in Kneeland v. Trust Co., 136 U. S., at page 98, 10 Sup. Ct. 950.

"It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize the fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of displacement of vested liens. St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 1011."

An examination of the case of Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140, will show that it does not sustain the position of the petitioner. It is an authority to the contrary. A claim was made for rent on behalf of the Evansville Railroad. This road ran from Rockville to Terre Haute, 23 miles. The mortgagor had in June, 1872, hired that road by a written lease, terminable by either party on notice, at a rental of $2,012.50 per month; and the covenants of the lease were to maintain the road in good condition, and to permit the Evansville Company to use six miles of it at a stipulated price. The mortgagee road went into the hands of a receiver, who adopted the lease, used the leased road, and received regularly from the Evansville Company the price it had agreed to pay for the six miles,—$262.50 per month. The master reported in favor of a claim for all the rent due before as well as after the receivership,—$56,036.21. Exceptions were taken, and the court ordered an inquiry as to the fair rental value for the use of the property by the receivers

and the value of the delapidation.    A new report was made, allowing $35,318.62.    This was confirmed.    "It is on the basis, not of the lease, but of the actual value of the use of the property used by the receivers, with the clear assent of all the parties interested."    106 U. S., at pages 312, 313, 1 Sup. Ct. 163, 164.    The rent prior to the receivership was not allowed.    And at page 311, 106 U. S., and page 162, 1 Sup. Ct., the court indicates what debts due before the receivership may be preferred.    It is easy to see that the payment of unpaid debts for operating expenses accrued within 90 days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated in the interests both of the property and the public; and the payment of limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances, the outcome of indispensable business relations, when a stoppage of such relations would be the probable result in case of nonpayment, involving largely the interests of track and traffic, may well place such payments in the category of payments to preserve the mortgage property in a large sense, and entitle them to be made a first lien.

In the case at bar the receivers of the Charlotte, Columbia & Augusta Railroad Company never took charge of the leased property, nor used it a day.    They assumed charge of and conducted the mortgagor road.    This itself is a circumstance going to show that the use and control of the leased lines were not necessary in order to keep the mortgaged road a going concern.    The consideration expressed in this lease does not appear to be one of those exceptional claims which are given precedence over a vested lien.    The motion is granted, and the petition is dismissed.