## Case No. 14,258.

TURNER et al. v. INDIANAPOLIS, B. & W. RY. CO. et al.

[8 Biss. 315.][1]

Circuit Court, D. Indiana and S. D. Illinois. Oct., 1878.

RAILROADS — CLAIMS OF OPERATIVES AND SUPPLY MEN—RECEIVER.

1. The court can require the receiver of a railroad to pay the claims of operatives and supplymen, owing at the time of his appointment, and even to hold the property subject to them; not as a lien on the road but in the exercise of the equitable discretion of the court.

[Cited in Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 196.]
[See Atkins v. Petersburg R. Co., Case No. 604.]
[Cited in Manchester Locomotive Works v. Truesdale, 44 Minn. 118, 46 N. W. 303.]

2. In fixing a time within which such claims will be allowed and ordered paid, the court will adopt by analogy the rule of the state statutes in relation to liens on railroads for work done, and supplies and materials furnished.

[Bill in equity by Malcolm C. Turner and others against the Indianapolis, Bloomington & Western Railway Company and others.]

Shortly after the federal courts in this circuit took possession, by receivers, of railroads in foreclosure proceedings, a policy was adopted of requiring the payment by them of what were called "back" claims for materials, labor and supplies, out of the income, and sometimes, in case of sales of the railroad property under decree, out of the proceeds. This had been the practice in this court for several years. In the present case this policy was attacked, and the court was requested to reconsider its rulings.

J. D. Campbell, R. E. Williams, Ashbel Green, J. Augustus Johnson, G. W. Parker, Charles W. Fairbanks, and Benjamin Harrison, for different mortgagees.

John M. Butler, Samuel M. Harrington, A. J. Gallagher, and W. A. Ketchum, for labor, supply, and material claims.

DRUMMOND, Circuit Judge. I will state some of the reasons which have caused the court to adopt the practice which exists in this circuit, in relation to materials and supplies which have been furnished railways, and labor performed on them, when they are placed in the hands of receivers by the court.

The question is important, because there have been within a few years numerous railways in this circuit operated by receivers, the annual income of which is many millions of dollars. It will be borne in mind that in all cases where a foreclosure has been sought by the bondholders, the mortgages provide that the after-acquired property shall be bound by the mortgage, and it has been decided by the supreme court that such a

contract overrides any judgment obtained against the railway company and execution issued, even as to personal property coming into possession of the company before judgment and execution. The railways do not come within the control of the court until after default on the bonds or coupons, and generally after absolute insolvency. There are, therefore, when application is made to the court for the appointment of a receiver, in all cases large balances due to operatives, and for supplies and materials furnished. There are also contracts running with other railways, upon which balances are due, and which contracts must often be continued in force in order to preserve the security of the mortgagees. The receiver takes the road with the benefits accruing from such contracts, and uses any supplies or materials which are on hand and not paid for. It therefore early became a question in this species of litigation what rule should be adopted by the court as to such claims against railway companies. A very simple way to dispose of the question was to take the railway at the time it came into the possession of the court, pay for all work done and supplies furnished thereafter, and refuse to pay any debts so incurred before. But that seemed impracticable. It was not like an ordinary mortgage on a farm or a house. A railway is matter of public concern. It is one of the great instruments of modern commerce between states and nations. The public as well as private interests require its continual operation. To refuse to pay anything whatever for past services or supplies or materials has never, it is believed, been attempted by any court, or even demanded by any mortgagee. The receiver goes into the possession of the railroad with all its appliances and instrumentalities, with its men at work on the track or running the trains, with its coal, oil, tools and other means of operating the road. The mortgagees have come into court asking it to assume possession of the road to protect their interests. Are the interests of all others, operatives and supply-men who happen to have claims against it at the time to be absolutely ignored in the case of insolvent companies? I think not. The appointment of a receiver is, to a great extent, a matter of discretion in the court, and it has been thought that the court might require the receiver to pay certain of these claims, and even to hold the property subject to them; not as a lien on the road, but in the exercise of the equitable discretion of the court in dealing with property which is of a peculiar character, and under circumstances of which the past history of litigation affords no example or precedent.

What should be included within the claims to be paid has also been the subject of consideration, and the practice has been to allow all to be paid that could be fairly regarded as a part of the actual operating ex-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

penses of the road, whether for labor or supplies, in their various forms. It being conceded that some claims for past services should be paid, the next point to be determined was, what limitation, if any, as to time should be placed upon such payment. It was found in many cases that those who had control of the railways, instead of paying the current operating expenses of the companies would postpone the payment of the same, sometimes for many months, in favor of the interest due on the mortgages, which they would discharge, in the hope, apparently, that a more favorable time in the business of the roads would enable them to make up the deficiency. It was in view of this and similar considerations growing out of the actual condition of affairs, and of the absolute necessity of fixing some reasonable time within which such claims should be allowed, that the court adopted, as by analogy, the rule of the statute of Illinois, in relation to liens on railroads for work done, and supplies and materials furnished. During the discussions which have taken place on this subject, the allowance of these "back" claims has been sometimes called a lien, but, in point of fact, it never has been, nor can it be, justly so considered, but, as already stated, as an exercise of the equitable power of the court in the premises.

It is but fair to say, in the numerous cases which have come before the court, its rulings upon this subject have been generally acquiesced in by the counsel of the mortgagees. The magnitude of the claims in this case is such as perhaps to cause hesitation in following the rule which has been heretofore established, and makes it desirable to obtain from the supreme court a decision which shall announce some just principle that may be a guide in these and similar cases. While it has been generally admitted that the court had a discretionary power in the direction indicated, to disburse the earnings of the road, it has been insisted that these claims should not be considered binding on the property in case of foreclosure and sale. The view that has been taken of that branch of the subject has been this: In general, when the mortgagees have come before the court to ask for the appointment of a receiver, the property has been in a very dilapidated condition, the rails nearly worn out, the ties needing replacement, the rolling stock, station houses and bridges, repairs—the whole property being in a condition to render the transit of persons and merchandise dangerous. The practice has therefore been, instead of immediately directing the receiver to pay for labor or supplies or materials previously furnished, to expend the receipts in repairs of the road, in the purchase of new iron or of steel, and of rolling stock, and in the construction and repair of side tracks, bridges, station houses, etc., thus adding to the security of the mortgagees by enhancing the value of the property. It has been thought that under the same equitable discretion which has been heretofore referred to, this gave the operatives and material-men a just claim upon the property itself. It has not unfrequently happened that railroads which were comparatively worthless when they came into possession of the court, have become under its administration valuable property.

It is for these and other like reasons that the court in the appointment of receivers in all cases of railroads in this circuit has required them, either at the time of such appointment, or as being so understood then, by subsequent order, to pay for labor performed, or supplies or materials furnished during the time indicated. The court has always treated this kind of property as including in the security given to the mortgagees not only real and personal estate in the ordinary sense, but franchises and intangible property.

The experience of the court which, it may be said, has been obtained by the management for many years of immense amounts of this kind of property, has satisfied it that practically, it would be well nigh impossible, looking at things as they actually exist, to operate the roads by receivers without some allowance for claims of the character mentioned, existing at the time of their appointment, and that the limitation already stated is not an unreasonable one, in view of all circumstances.

[See Cases No. 14,259 and 14,260.]

NOTE. The conclusions and practice of the court stated in this opinion were substantially sustained, subsequently, by the supreme court of the United States in Fosdick v. Schall, 99 U. S. 235.