FARMERS' LOAN & TRUST Co. *v.* GREEN BAY, W. & ST. P. RY. Co.,
(FRANCK, Intervenor.)

*(Circuit Court, E. D. Wisconsin.  March 23, 1891.)*

RAILROAD MORTGAGE—FORECLOSURE—PRIORITIES.
    A claim against a railroad company for causing the death of plaintiff's intestate is a demand arising from a failure of duty, and could not by its creation benefit, preserve, or increase the *corpus* of the estate of the company, and is not entitled to priority upon the foreclosure of a mortgage thereof.

In Equity.

Upon the intervening petition of Emily Franck, administratrix, etc. The bill is filed to foreclose a trust-deed executed by defendant to complainant on the 1st day of September, 1881, upon its line of railway, to secure its bonds of even date, aggregating $1,600,000, maturing in 1911, or at the option of the trustee, upon default in payment of interest. The interest of the bonds was payable semi-annually on the 1st days of February and August in each year. Upon default in the payment of interest, continuing 30 days, the trustee at its election might, and, upon request of the holders of one-fourth in amount of the bonds, should, take possession of the mortgaged premises, and dispose thereof at sale, as provided. Default occurred in the payment of interest due August 1, 1888, continued after default for more than 30 days, and in all subsequently maturing interest. On the 31st of July, 1890, the trustee, after proper request of the bondholders, demanded and received possession of the mortgaged premises, electing to treat as matured the entire principal sum of the bonds, and has since operated the railway. On the 14th August, 1890, the trustee filed this bill to foreclose. On the 18th of August an order of the court, entered by consent of the parties, affirmed the possession of the trustee, authorizing its continuance in possession under the protection of the court, and conferred upon the trustee the usual powers and duties of a receiver. No provision was made by the order with respect to the floating indebtedness of the railway company. On the 5th day of January, 1891, Emily Franck filed her intervening petition, representing that Martin Franck, a conductor in the service of the railway company, lost his life on the 15th day of April, 1890, in the discharge of his duty, without fault on his part, and solely through the neglect of duty of the railway company; that he left a dependent father; that the railway company is insolvent; and that she, as administratrix of the estate of the deceased, prefers this petition to obtain for the father proper indemnity for the loss of the son, rightfully demandable under the laws of Wisconsin. The complainant takes issue with the petition,

and alleges the superiority of the lien of its mortgage. The petitioner now moves the court to institute necessary proceedings to establish the liability for the death, and the amount recoverable therefor, claiming that such amount, when ascertained, constitutes a proper charge upon the income and *corpus* of the property, superior to the lien of the trust-deed.

*G. W. Hazelton*, for petitioner.

*Winkler, Flanders, Smith, Bottom & Vilas*, for trustee.

JENKINS, J., (*after stating the facts as above.*) The objection that the application is premature cannot be sustained. It is not essential that the demand should be first established in a suit at law against the railway company. If the petitioner's demand be a proper charge upon the fund in the hands of the receiver growing out of the operation of the railway, it is properly cognizable in this court, which, as a court of equity, has through its receiver possession of the railway, and exclusive control of the fund realized from its operation. In such case it pertains to this court to adjust all demands upon the fund, and to that end may permit an action at law, or direct the trial of a feigned issue. *Barton* v. *Barbour*, 104 U. S. 126. The act of congress permitting suit against receivers appointed by a federal court, without leave of the appointing court, is limited "in respect of any act or transaction of his in carrying on the business connected with such property." 25 St. 436, § 3. It does not include a demand arising prior to such appointment.

The principle upon which equity acts in allowing, with respect to certain claims, priority of payment over precedent mortgage in the case of railways is settled by repeated adjudications of the supreme court. The gross income arising from the operation of a railway should be first applied to the payment of the expenses of operation, proper equipment, and needful improvements. If the income be diverted to the payment of bonded interest, in disregard of the payment of such expenses, there should be restoration to original equitable right. Failing diversion, there can be no restoration. The amount of restoration is dependent upon the amount of diversion. The power rests upon the fact of diversion of a fund belonging in equity to the general creditors, or some of them. *Fosdick* v. *Schall*, 99 U. S. 235; *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675; *St. Louis, etc., R. Co.* v. *Cleveland, etc., Ry. Co.*, 125 U. S. 658, 8 Sup. Ct. Rep. 1011; *Railway Co.* v. *Hamilton*, 134 U. S. 296, 10 Sup. Ct. Rep. 546; *Morgan's L. & T. R. & S. Co.* v. *Texas Cent. Ry. Co.*, 137 U. S. 171, 11 Sup. Ct. Rep. 61. The exercise of this equitable power in the court is not, however, dependent solely upon diversion of current earnings to payment of bonded interest, leaving current expenses unpaid, but is exercised as well in consideration of the fact that, in case of failure of the trustee to take possession upon default, it is indispensable to the preservation of the property, and its maintenance in integrity, that it should be operated. It must be kept a going concern. The expense of such operation and maintenance within a limited time prior to the receivership is therefore

allowed priority. *Miltenberger* v. *Railway Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140; *Trust Co.* v. *Souther*, 107 U. S. 591, 2 Sup. Ct. Rep. 295.

The principle is here sought to be extended to embrace a claim for a death occurring in the operation of the road within the limited period. In an able and ingenious argument the counsel for the petitioner insists that, although the liability for the death here rests upon statute law, and is to a stranger to the contract of hiring, and arises from failure of duty enjoined by the law of master and servant, yet that the liability is imposed by the law upon, and constitues a term of, the contract of hiring, and so must be regarded as a liability incurred in the operation of the road, having priority of payment over a precedent mortgage. This proposition finds support in the case of *Dow* v. *Railroad Co.*, 20 Fed. Rep. 260. There Judge CALDWELL, in appointing a receiver of the railway, provided by his order for the payment of all obligations incurred for injuries to person within the six preceding months. He states that failure by the trustee to take possession works an implied assent that the earnings of the road should be applied to compensate those damaged in its operation, and asserts that the rulings of the supreme court furnish ample authority for such order. A careful reading of all decisions of the supreme tribunal upon that subject convinces me that Judge CALDWELL has either misconceived the underlying principle of these decisions, or seeks to extend it unduly.

The supreme court, as I read the opinions, has been most careful to limit the doctrine to claims representing that which has inured to the benefit of the mortgaged property, such as labor and supply claims, amounts due to connecting roads for material, repairs, ticket and freight balances, and the like, allowing priority to such claims, because their non-payment would cause cessation of work, supplies, and running arrangements, and result in stoppage in the operation of the road, which, in the interest, as well of the bondholder as of the public, is not to be tolerated. The doctrine is analogous to that of the admiralty allowing certain supplies to a vessel precedence over a mortgage upon the vessel, and rests upon the same principle. The vessel must not be allowed to rot at the wharf. The railway must not be permitted to rust, and its franchise to be forfeited, through failure to operate. Such things, therefore, that are done to avoid such result working destruction to the mortgage should be compensated in priority to the mortgage. The protection accorded is for that done for the benefit of the *res*, not that suffered in the doing, not to individual right under the contract; for that done in performance of the contract, not that suffered by breach of contract; for labor and supplies furnished, not wrong sustained. A death claim does not come within the principle. The loss of life occurred in the operation of the road, but arose from failure of duty. It happened in the performance of the contract, but not because of performance. Its promoting cause was the default of the company, not the labor performed. The resulting death was a detriment, not an aid, to the road. It was in no possible sense of advantage to the mortgage interest. The *res* was not benefited, and that, I take it, is the test. If failure to take possession

works an implied assent that the earnings should be applied in compensation of casualties in priority to the mortgage, why not as to all floating indebtedness, to all improvements upon the road, and irrespective of time? Why not say that, through failure to take possession, the bondholders assent that earnings should be devoted to the payment of all debts incurred after default in the payment of interest, and in priority thereto? Why limit such priority to the period of six months prior to the receivership? If priority is to be predicated upon implied assent instead of upon benefit to the *res*, it should be allowed to all claims arising during failure to take possession from which assent is implied. The priority should be co-extensive in point of time with the implied assent. That logically results from the principle bottomed upon implied assent. Such doctrine is, to my thinking, a broad departure from the equitable doctrine declared by the supreme court, and would be ruinous in its consequences. If conceded, the entire floating debt of a railway company, occurring after default in payment of interest, and during failure to take possession, would necessarily and logically be given priority. Vested rights of property would be subjected to great detriment under such holding. The bonds of American railways are scattered throughout Europe, and are held in many hands. It requires much time to institute concerted action by the holders after default in payment of interest. Meantime, unprincipled directors, anxious to retain possession of the road, could contract indebtedness--given priority by such ruling—working ruin to the mortgage interest. The bondholder would be "improved out of his estate," and his vested rights placed at the mercy of hostile directors. I am unwilling to assent to such doctrine. I do not understand it to be the law. The rule is that current income should be first devoted to the current expenses of operation. Liability for death is not an expense of operation in any just sense of the term. It is an unsecured debt, and, as such, cannot take precedence in payment over prior and express liens. *St. Louis, etc., R. Co.* v. *Cleveland, etc., Ry. Co.*, 125 U. S. 658, 673, 8 Sup. Ct. Rep. 1011.

The application was presented only upon the theory of priority. The record presents no disclosure touching income. There is no suggestion of its diversion. There has been no sale of the road. It may happen that the income will more than suffice to discharge the operating expenses and the unpaid and accruing interest. There may arise equities sanctioning payment of the claim not possible now to forecast. The petitioner may therefore take order for an issue to determine the question of liability of the company and its amount, subject, with respect to payment, to the ruling herein declared.