St. Louis, Alton and Springfield Railroad Co. *et al.*

*v.*

Henry O'Hara *et al.*

*Opinion filed December 21, 1898—Rehearing denied February 14, 1899.*

1. Railroads—*receivership—a claim for necessary cars may be given priority over mortgage debt.* A court of equity having railroad property in charge for administration as a trust fund for the payment of encumbrances may declare a lien prior to that of the mortgage debt in favor of claims accruing within a reasonable time before the receivership, for necessary rolling stock to keep the railroad a going concern. (Phillips and Cartwright, JJ., dissenting.)

2. Accounting—*what a proper item of credit on accounting against railroad president.* A claim by the president of a railroad company for mileage earned by his own cars, which he rented to the company until the necessary cars could be secured to properly operate the road, is properly allowed as a credit in his favor on accounting by the mortgage bondholders for funds handled by him.

3. Corporations—*president of private corporation not entitled to salary unless authorized.* The president of a private corporation is not entitled to an allowance for salary upon an accounting against him for the funds handled during his term of office, in the absence of authority by resolution or by-law of the board of directors.

*St. L., A. & S. R. R. Co.* v.*Crews,* 75 Ill. App. 496, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

The statement of facts and the opinion of the Appellate Court herein are as follows:

"In October, 1890, a bill was filed in the circuit court of Sangamon county in the name of B. F. Johnston and others, against the St. Louis, Alton and Springfield Railroad Company, to enforce the collection of judgments recovered by the complainants against the company for costs of construction, aggregating $73,918.32, the appointment of a receiver, etc. Joseph Dickson was appointed receiver. The road was heavily mortgaged, and in May,

1892, a decree of foreclosure was rendered by the court on cross-bills of the Farmers' Loan and Trust Company, trustee, on a first mortgage, and the Atlantic Trust Company, trustee, on a second mortgage. Post, Martin & Co., a banking firm in New York, were interested, and for that reason entered into an arrangement with Henry O'Hara, a man of extensive experience in equipping railroads, building cars, etc., residing at St. Louis, to form a syndicate for the purchase of the road at the foreclosure sale and to re-organize it. In pursuance of that arrangement O'Hara bid off the road for himself and his associates in the syndicate, and it was re-organized under the name of the St. Louis, Chicago and St. Paul Railroad Company, with O'Hara as president. The new company issued and placed in the hands of Post, Martin & Co. $1,200,000 of its first mortgage bonds, to be negotiated by them, for the purpose of paying the purchase price of the road at the master's sale and for improving it and placing it in successful operation. Prior to the sale O'Hara had, for the syndicate, bought from the complainants in the original bill the judgments above mentioned, taking an assignment to himself and paying for them in his own money. After the sale the property was turned over to O'Hara, who, as president and treasurer, had active charge of its management until April, 1893, when he resigned and turned it over to Post, Martin & Co. During the time he had control he expended several hundred thousand dollars received by him from Post, Martin & Co., and in earnings, in extending the road, buying cars and improving it generally. The terms of the foreclosure sale were not complied with. Post, Martin & Co. became embarrassed, and as a consequence proceedings were commenced against the new company, whereby the road was, on the 13th of June, 1893, placed in charge of Joseph Dickson and Charles E. Kimball, as receivers. A short time afterwards the receivers obtained an order of the court authorizing them to issue certificates, in an

amount not exceeding $400,000, upon the pledge and faith of the property in their possession, and between the time of obtaining such order and the 22d of December, 1896, certificates were issued aggregating $396,273.

"On the 7th of October, 1893, O'Hara filed an intervening petition, accompanied by an itemized statement of account, in which he sought to have declared in his favor a superior lien, over the mortgages, for the judgments purchased and material furnished during the time he was operating the road, amounting to something like $125,000. Both railroad companies, the Atlantic Trust Company and the receivers answered by general denial, and filed a cross-bill, charging that O'Hara had received moneys largely in excess of the amounts disbursed by him while president and treasurer of the road, and praying for an accounting. The cause was referred to a special master, who took a large amount of testimony, stated an account and reported. Before the report was made O'Hara assigned forty per cent of his claim to his attorney, Seth F. Crews, and sixty per cent of it to Eliza P. O'Hara, who filed intervening petitions. After sustaining certain exceptions to the special master's report, the court rendered a decree in favor of the petitioners for $17,592.70, and declared a lien upon the property superior in right to the mortgages upon it."

Opinion by Presiding Justice HARKER:

"This appeal is prosecuted for the purpose of reversing a decree of the circuit court for $17,592.70, rendered upon the intervening petition of Henry O'Hara, supplemented by the petitions of his assignees, Seth F. Crews and Eliza P. O'Hara. The court, by its decree, found that O'Hara was chargeable with $947,517.95 and was entitled to credits to the amount of $965,110.65, leaving a balance due him of $17,592.70, for which he was entitled to a lien prior in right to that of the mortgage bondholders. Neither party seems satisfied with the decree, and appellees have assigned cross-errors.

"Appellants complain of the allowance by the court of $69,000 upon the car item for six hundred cars furnished, the allowance of $2350 for car rental, and the declaring of a lien upon the railroad property superior to that of the mortgage bondholders. Appellees complain of the disallowance by the court of O'Hara's salary items, amounting to $2250, to the disallowance of a draft for $15,000 dated March 17, 1893, and to the disallowance of a draft for $10,000 dated March 21, 1893.

"The $69,000 item was twenty per cent of the cost of construction of six hundred freight cars built by the Madison Car Company for the St. Louis, Chicago and St. Paul Railroad Company, and was allowed for material furnished by O'Hara. The cars were delivered to the railroad company a few weeks before O'Hara resigned as president. It is undisputed that O'Hara furnished the material and that it went into the building of the cars. The Madison Car Company was paid its proportion for the building of them (seventy-five per cent) through drafts of O'Hara on Post, Martin & Co., but it nowhere appears in proof that O'Hara was ever paid for his material either by the railroad company or Post, Martin & Co. It is contended, however, that this was a transaction entirely between O'Hara and Post, Martin & Co., and that O'Hara did not intend it as a charge against the railroad company; that he received credit for it upon the books of Post, Martin & Co.; that it was charged against the railroad company upon their books, and had been paid out of the proceeds of the mortgage bond sale made by them.

"With reference to the contention that the transaction was a personal one between O'Hara and Post, Martin & Co., and that he did not at first intend it as a charge against the railroad company, we deem it sufficient to say, without going into a discussion of the evidence bearing upon that point, that the record does not support such contention. It is true that he included the item in a general account which he once rendered to Post, Mar-

tin & Co.; but that is satisfactorily explained by his testimony that when he did so he knew Post, Martin & Co. were the fiscal agents of the road and had had the financial management of the enterprise from the start, and that it was at that time understood between them that all his bills and accounts against them and the railroad company would be immediately adjusted and paid. It does not appear that Post, Martin & Co. had any authority to credit O'Hara's personal account with the item for material furnished for the cars and charge the amount against the railroad company. O'Hara testified that he gave no such authority. His claim could not be regarded as extinguished, therefore, even though Post, Martin & Co. retained from the proceeds of the bond sale an amount sufficient to pay it. The evidence shows, however, that with the other disbursements from those proceeds there was not a balance sufficient to pay it.

"In support of the contention that the circuit court erred in holding that the claim for material was a preferred one and had priority over the mortgage to the Atlantic Trust Company, counsel have cited quite a number of decisions by the United States Supreme and Circuit Courts. We do not regard them as supporting the contention. The leading ones are *Fosdick* v. *Schall*, 99 U. S. 239, and *Quincy, Missouri and Pacific Railroad Co.* v. *Humphreys*, 145 id. 82, and they are valuable to us in determining the question for the sole reason that they announce the rule that where railroad property is in charge of a court for administration as a trust fund for the payment of incumbrances, it may declare a lien, prior in right to that of existing mortgages, in favor of claims accruing within a reasonable time prior to the application on account of wages, supplies and materials necessary to keep the road a 'going concern.' When this railroad came into the hands of O'Hara it was so poorly equipped that it was impossible to make its earnings meet running expenses without adding to its rolling stock. The con-

177—34

struction of the six hundred cars was necessary to its successful operation. They were furnished in March, 1893, the present receivers took charge in June, and the intervening petition was filed in September following. The circumstances were such, both as to the necessities of the road for the material and the time within which they were furnished before the application, as to bring the claim within the rule announced in the cases cited above. Again, the six hundred cars enhanced the value of the property for the stockholders and the security for the mortgage bondholders. Furnished as they were, they came within the term 'permanent betterments,' as used by the courts. Independent of the holding of courts in adjudicated cases similar to this one, equity and good conscience would require that the claim should be declared superior in lien right to that of the mortgage bondholders.

"As to the car rental item of $2350, O'Hara was uncontradicted in his testimony that it was the amount of mileage earned by cars owned by him, as reported by the car-service agent. When he took charge of the road it needed more rolling stock, but there was no money to buy it with. In that emergency he rented to the company some of his own cars. We see nothing irregular in that transaction, and nothing in the record to justify an attack upon Mr. O'Hara's integrity or veracity because of the manner in which the claim was presented. It was not made a lien, but was simply allowed as a credit against funds which came into his possession while he had charge of the road.

"The court properly disallowed the salary item of $2250. The claim was for O'Hara's services during the nine months he had charge of the road as president. He was not president by virtue of any order of the court. His authority to hold that office and operate the road came from the new company, the St. Louis, Chicago and St. Paul Railroad Company. The new company had fixed

no salary for him, and the law is well settled in this State that an officer of a corporation cannot recover salary unless the same is fixed by resolution or by-law passed by the board of directors.

"The two draft items which appellees contend should have been allowed were drafts drawn on O'Hara by Post, Martin & Co. in March, 1893, and paid by him, one for $15,000 and the other for $10,000. Appellees claim that the money was used for railroad purposes. The basis of that claim is, that they were made to appear in O'Hara's credit in a railroad account sent out by Post, Martin & Co. No one pretends to trace the money into expenditures for the railroad. O'Hara had large dealings with that firm independent of matters pertaining to this railroad. Mr. Post, one of the firm, testified that the drafts did not represent money which was used on railroad account, and that the railroad had nothing to do with it. He explained that they were originally placed to the credit of O'Hara on his personal account, but were by an error of the book-keepers subsequently transferred to the railroad account. As soon as the error was discovered they were credited back on the personal account, and O'Hara afterwards received credit on a statement of his personal account rendered by the firm to him. O'Hara himself treated them as belonging to his personal account, as evidenced by an account rendered to the firm by him. With this view it is unnecessary to discuss the point as to whether a money advance should be held a preferred claim.

"We see no reason for in anywise changing the decree."

PATTON, HAMILTON & PATTON, JOHN C. LANPHIER, EDWARD S. ROBERTS, and ELENEIOUS SMITH, for appellants:

The intervener, as president and treasurer of the railroad company, was acting in a trust capacity, and having failed to keep proper books of account, every doubt which

may arise with respect to any claim on his part growing out of such relation must be resolved against him. *Illinois Linen Co.* v. *Hough,* 91 Ill. 63; Perry on Trusts, (4th ed.) sec. 821; Story on Agency, (9th ed.) sec. 203; Mechem on Agency, sec. 528.

An agent while in the employ of his principal will not be permitted to make a profit for his own benefit, and if he makes profits he must account for them to his principal. *Glover* v. *Laylon,* 145 Ill. 92; Evans on Principal and Agent, 287; *Fish* v. *Seeberger,* 47 Ill. App. 580; *Lyon* v. *Taylor,* 49 id. 639; Story on Agency, (9th ed.) sec. 207; Perry on Trusts, (4th ed.) secs. 427, 428; Mechem on Agency, sec. 469.

No priority can be allowed claims for money loaned or advanced to a railroad company over mortgage indebtedness. *Fosdick* v. *Schall,* 99 U. S. 235; *Railroad Co.* v. *Humphreys,* 145 id. 82; *Humphreys* v. *Allen,* 101 Ill. 490; *Morgan's Co.* v. *Railway Co.* 137 U. S. 200; *Kneeland* v. *Loan Co.* 136 id. 97; *Railroad Co.* v. *Railway Co.* 125 id. 658; *Miltonberger* v. *Railway Co.* 106 id. 286; *Pennsylvania Co.* v. *Calhoun,* 121 id. 251; *Porter* v. *Bessemer Co.* 120 id. 671; *Wood* v. *Guaranty Co.* 128 id. 416; *Burnham* v. *Bowen,* 111 id. 783; *Thomas* v. *Car Co.* 149 id. 95; *Huidekoper* v. *Locomotive Works,* 99 id. 258; *Farmers' Trust Co.* v. *Railroad Co.* 21 S. W. Rep. 652; *Railroad Co.* v. *Hamilton,* 134 U. S. 296; *Finance Co.* v. *Railroad Co.* 49 Fed. Rep. 693; 52 id. 678; 48 id. 188; *Central Trust Co.* v. *Railroad Co.* 46 id. 26; *Bound* v. *Railway Co.* 58 id. 473; *Bank* v. *Railroad Co.* 63 id. 25; *Wood* v. *Railroad Co.* 70 id. 743; *Farmers' Trust Co.* v. *Railroad Co.* 71 id. 79; 73 id. 712.

An officer of a private corporation is not entitled to compensation for services rendered, unless such compensation be fixed by a by-law or resolution adopted before the rendition of the services. *Ellis* v. *Ward,* 137 Ill. 509; *Cheeney* v. *Railway Co.* 68 id. 570; *Illinois Linen Co.* v. *Hough,* 91 id. 63; *Railway Co.* v. *Miles,* 52 id. 174; *Holder* v. *Railway Co.* 71 id. 106; *Gridley* v. *Railway Co.* id. 200; *Railroad Co.* v.

*Sage*, 65 id. 328; *Railway Co.* v. *Cheeney*, 87 id. 446; *Merrick* v. *Coal Co.* 61 id. 472.

Ralph Crews, and Seth F. Crews, for appellees:

Railroad property being in the hands of the court for administration as a trust fund for the payment of encumbrances, the court, in putting it in condition for sale, may, if needed, recognize the claims of material-men, laborers, and some few others of similar nature, accruing for a brief period prior to its intervention. *Fosdick* v. *Schall*, 99 U. S. 235; *Railroad Co.* v. *Humphreys*, 145 id. 82.

Mr. Justice Boggs delivered the opinion of the court:

Our investigation of this record, aided by the arguments, oral and printed, of counsel for the respective parties, has led us to the conclusion the judgment of the Appellate Court is correct. The facts are fully stated in the statement of facts prepared by that court, and its opinion is a satisfactory statement of the application of the law to such facts.

The opinion of the Appellate Court is adopted as the opinion of this court, and its judgment is affirmed.

*Judgment affirmed.*

Phillips and Cartwright, JJ., dissenting: We do not concur in giving to the claim of O'Hara preference over the mortgage debt and displacing the priority of the mortgage lien created by contract. There was no diversion of income, and no ground for giving such preference except that the mortgaged property was improved. No authority has been cited which supports the claim for such a preference, and we know of no principle of equity under which it can be allowed. The same argument for a preference can be made in every case where money, labor or materials enhance the value of mortgaged property.