## CITIZENS TRUST COMPANY *v.* NATIONAL EQUIPMENT AND SUPPLY COMPANY ET AL.

### [No. 21,921.   Filed June 21, 1912.]

1. RECEIVERS.—*Quasi-Public Corporations.—Light and Water Company.—Priority of Unsecured Debt Over Prior Mortgage.*—Where a mortgage on the plant of a water and light company is similar to those usually executed by railway corporations, in that it binds after-acquired property, covers future income, and provides for possession by the mortgagee on the breach of any condition named, the recognized doctrine in cases of railroad mortgages is applicable, so that where, within a reasonably short time prior to the appointment of a receiver for the company current earnings of the company were diverted to the betterment of the mortgaged property, and in the meantime debts were created for current supplies, materials and operating expenses, the latter, though not liens, constituted preferential claims with priority over the existing mortgage lien. p. 172.

2. RECEIVERS.—*Priority of Unsecured Debts.—Claims Included in Preferred Class.*—Generally claims originating more than six months prior to a receivership are not included in the preferential class, but there is no fixed rule as to the time limit, and where, more than six months prior to the appointment of a receiver, supplies and materials were furnished to a light and water company which was at the time without credit and enabled to continue a going concern only by reason of such supplies and materials being furnished, and it was not contemplated that they should be paid for until the plant should be so repaired as to continue its operation, claims therefor were entitled to preference over an existing mortgage lien. pp. 175, 177.

3. RECEIVERS.—*Priority of Unsecured Debts Over Prior Mortgage. —Notice of Mechanic's Lien.*—Where, prior to the appointment of a receiver, a mechanic performed services in repairing the boiler of a light and water plant, his right to assert a preference for his claim was not waived by filing a mechanic's lien notice under §8295 Burns 1908, Acts 1899 p. 569. p. 176.

4. TRIAL.—*Findings of Fact by Court.—Findings Not Specific.— Remedy.*—Where the special findings of the court are not correct, or are not sufficiently specific, the sole remedy is by motion for a new trial. p. 177.

From Wells Circuit Court; *Charles E. Sturgis,* Judge.

Action by the National Equipment and Supply Company against The Montpelier Light and Water Company. The Citizens Trust Company, by permission, became a party defendant and filed a cross-complaint against the plaintiff and defendant and others. From an adverse judgment, cross-complainant appeals. *Affirmed.*

*Walter Olds, Eichhorn & Vaughn,* for appellant.
*Simmons & Daily* and *L. B. Simmons,* for appellee.

MORRIS, J.—From the facts specially found by the court, it appears that prior to January 1, 1901, appellee Montpelier Light and Water Company, a corporation, was organized to operate a system of water-works and electric lighting for the city of Montpelier. On January 1, 1901, it executed to appellant a trust deed for all its real and personal property, franchises, after-acquired property and income, to secure the payment of first-mortgage bonds of even date, in the aggregate amount of $38,000, together with interest coupons, payable semiannually. These bonds were in denominations of $500 each, maturing in the aggregate sum of $2,000 per annum, commencing January 1, 1904. The trust deed provided that the failure to pay the principal or interest of the bonds, when due, or to comply with the other conditions of the deed, should authorize the trustee to take possession of and manage, the company's property. It also provided that in case of default in the payment of interest coupons, con-

MAY TERM, 1912.     169

Citizens Trust Co. *v.* National, etc., Supply Co.—178 Ind. 167.

tinued for six months after demand, the entire debt should, at the election of the trustee, become due.

No part of the principal, and no interest accruing after July 1, 1902, was ever paid. There is due and unpaid on said bonds, as principal and interest, the sum of $53,856.

On January 5, 1901, the light and water company conveyed all its property, subject to the provisions of the trust deed, to the city of Montpelier, which thereupon commenced the operation of the water and light plant, and furnished the city and citizens thereof with water and electric light.

On June 6, 1905, the city conveyed the property to R. G. Kerlin, trustee, who, on June 12, following, conveyed it to appellee The Montpelier Light and Water Company, a corporation theretofore organized to supply water and light to the city and its inhabitants, and the company operated the plant until the appointment of a receiver.

In April, 1907, the plant became defective, and out of repair, and it became necessary, in order to operate it under its franchise, to have new meters, electric light poles, extensions of water and light lines, and various repairs of existing lines. The company was indebted in the aggregate sum of $60,000, and, by reason thereof, had no credit, and its creditors were threatening suits for the collection of their claims. On April 30, 1907, the water and light company entered into an agreement with plaintiff National Equipment and Supply Company, by which it was agreed that plaintiff should furnish it natural gas for fuel for its engines, and other supplies it might from time to time need in the operation of its plant, while it was repairing and extending it; and it would, when necessary repairs and extensions should have been completed, pay plaintiff for the same from its earnings.

Pursuant to the agreement, plaintiff furnished to the company natural gas, pipes and plumbing material, machine oil, and other necessary supplies, from April 30, 1907, to November 30, 1908, of the aggregate value of $7,557. The supplies

and articles furnished were suitable and necessary for the use of the water and light company, and were used by it. Plaintiff was paid on the account $1,000, leaving a balance due of $6,557.

While plaintiff was furnishing the water company the articles and supplies above mentioned, the latter installed new water and light meters, furnished and placed new poles, removed defective water lines and replaced them with new ones, extended its water and light lines, and repaired its plant, at a cost of from $15,000 to $18,000, all of which was paid for from the current earnings.

Appellee Montpelier Cup and Metal Works, under a like agreement, in 1908 furnished the water company certain materials for the repair of its engines, which were of the value of $463, and which were suitable and necessary for the use of the water company, and were used by it, and the account therefor is due and unpaid.

In December, 1908, appellee Christian Flaugh performed labor in repairing the boilers of the plant, to the value of $33, for which he filed and recorded a notice of mechanic's lien.

Long before the commencement of the action, The Montpelier Light and Water Company became insolvent, and has since so continued, and when this suit was filed it was necessary to appoint a receiver to protect the rights of creditors.

More than six months before filing its cross-complaint, appellant demanded payment of interest on the bonds, and elected to declare the entire debt due.

In December, 1908, appellee National Equipment and Supply Company filed its complaint in this action, against appellee The Montpelier Light and Water Company, praying judgment on its account, and the appointment of a receiver to take charge of the plant. The defendant answered, admitting its insolvency, and the court appointed a receiver on December 30, 1908, and authorized him to operate the plant. Subsequently, in March, 1909, appellant prayed, and

MAY TERM, 1912.    171

Citizens Trust Co. *v.* National, etc., Supply Co.—178 Ind. 167.

was granted, permission to become a party defendant to the action. It thereupon filed a cross-complaint against appellees National Equipment and Supply Company, Montpelier Light and Water Company, The Montpelier Light and Water Company, Montpelier Cup and Metal Works, Christian Flaugh, and others, praying for a foreclosure of its mortgage and the sale of the property to satisfy its lien.

To this cross-complaint the appellee National Equipment and Supply Company filed an answer, in which it alleged, in substance, the facts hereinbefore set out, and claimed that in the order of payment its claim was entitled to priority over that of appellant. Appellant's demurrer to this answer was overruled.

It also amended its complaint so as to contain the same facts averred in its answer to appellant's cross-complaint.

The court concluded, from the facts found, that appellant, and the above named appellees were each entitled to a personal judgment against The Montpelier Light and Water Company in the respective sums found due; that appellant was entitled to a decree of foreclosure of its trust deed, and that the property should be sold and the proceeds applied, after the payment of costs and a certain tax lien, to the payment (1) of the judgments of appellees National Equipment and Supply Company, Montpelier Cup and Metal Works, and Christian Flaugh, *pro rata,* and (2) to the payment of appellant's mortgage lien judgment. The judgment followed the conclusions of law, to each of which appellant reserved an exception.

Appellant assigns as error here the overruling of its demurrer, and the court's conclusions of law. Each of these assignments involves the same question.

Appellant earnestly contends that its mortgage lien is entitled to priority over the claims of the three appellees placed by the lower court in the preferential class.

Appellant's mortgage is similar to those usually executed by railway corporations, in that it binds after-acquired

172    SUPREME COURT OF INDIANA,

Citizens Trust Co. v. National, etc., Supply Co.—178 Ind. 167.

property, covers future income, and provides for pos-
session by the mortgagee on the breach of any condi-
tion named. *Turner* v. *Indianapolis, etc., R. Co.*
(1878), 8 Biss. 315, Fed. Cas. No. 14,258.

It is said that "every railroad mortgagee in accepting his
security impliedly agrees that the current debts made in
the ordinary course of business shall be paid from the cur-
rent receipts before he has any claim upon the income."
*Fosdick* v. *Schall* (1878), 99 U. S. 235, 25 L. Ed. 339. Con-
sequently it is held that if, for temporary convenience or
necessity, money is taken from the current debt fund and
put into that which belongs to the mortgage creditors, a
court of equity, when asked by the mortgagees to take pos-
session of the future income, through the appointment of a
receiver, and hold it for their benefit, may require, as a con-
dition to granting such relief, that what is due from the
earnings to the current debt fund shall be paid by the court
from future current receipts, before anything from that
source shall be paid to the mortgagees.

On the same principle, if the mortgagees demand a fore-
closure of the mortgage and sale of the property, and thus
deprive the court of the power to restore to the current debt
fund the money diverted therefrom for the betterment of the
property covered by the mortgage lien, a court of equity will
require, as a condition of granting such relief to the mort-
gagees, that the current debt fund shall be restored in like
manner, by drawing on the proceeds of sale. *Cambria Iron
Co.* v. *Union Trust Co.* (1900), 154 Ind. 291, 55 N. E. 745,
56 N. E. 665, 48 L. R. A. 41; *Fosdick* v. *Schall, supra; Hale*
v. *Frost* (1878), 99 U. S. 389, 25 L. Ed. 419; *Burnham* v.
*Bowen* (1884), 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596;
*Union Trust Co.* v. *Morrison* (1888), 125 U. S. 591, 8 Sup.
Ct. 1004, 31 L. Ed. 825; *St. Louis, etc., R. Co.* v. *Cleveland,
etc., R. Co.* (1888), 125 U. S. 658, 8 Sup. Ct. 1011, 31 L. Ed.
832.

It may be regarded as a settled rule, as applicable to rail-

way and similar *quasi*-public corporations, that where, within a reasonably short time before the appointment of a receiver, current earnings of the corporation have been diverted to the betterment of the mortgaged property, and in the meantime debts have been created for current supplies, materials and operating expenses, the latter constitute preferential claims which have priority over existing mortgage liens.

Such debts are not, strictly speaking, liens on the trust property, but they are regarded, in equity, as demanding payment before the mortgagees are entitled to equitable relief. *Virginia, etc., Coal Co.* v. *Central R., etc., Co.* (1898), 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068; *Turner* v. *Indianapolis, etc., R. Co., supra; Union Trust Co.* v. *Illinois, etc., R. Co.* (1886), 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963; *Blair* v. *St. Louis, etc., R. Co.* (1885), 22 Fed. 769; *Vilas* v. *Page* (1887), 106 N. Y. 439, 13 N. E. 743; *Addison* v. *Lewis* (1881), 75 Va. 701; *St. Louis, etc., R. Co.* v. *O'Hara* (1899), 177 Ill. 525, 52 N. E. 734, 53 N. E. 118; *Union Trust Co.* v. *Souther* (1892), 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488.

If the doctrine applicable to railroads may be here invoked, the facts found by the court bring this case within the rule, for it is found that at least $15,000 of current earnings were applied to repairs and betterments of the property, and by reason thereof appellee's debts, created for fuel, labor, and necessary current supplies furnished by the plaintiff and two of its coappellees, remained unpaid.

But it is insisted by appellant that the doctrine has no application to water and light companies, and even as to railways the application is being limited by recent decisions of the courts.

Appellees have cited but one water company case where the doctrine was recognized—*Ellis* v. *Vernon Ice, etc., Co.* (1893), 86 Tex. 109, 23 S. W. 858. It may also be conceded that the rule has been rarely applied except in railroad re-

ceiverships. However, in *Cambria Iron Co.* v. *Union Trust Co., supra,* it was applied in a street railway mortgage foreclosure, and in other jurisdictions has been recognized in receivership and foreclosure proceedings against *quasi*-public corporations, other than railroads. *Keelyn* v. *Carolina Mut. Telephone, etc., Co.* (1898), 90 Fed. 29; *Atlantic Trust Co.* v. *Woodbridge Canal, etc., Co.* (1897), 79 Fed. 39; 5 Thompson, Corporations (2d ed.) §6449; 34 Cyc. 356.

The reasons assigned for the doctrine are that a railroad is a matter of public concern, and is kept in operation for the benefit of stockholders, mortgage bondholders and the public, and all of them are interested in keeping it a "going concern", and those who contribute to such end deserve all the assistance a court of equity can render without violating essential property rights. *Cambria Iron Co.* v. *Union Trust Co., supra; Farmers Loan, etc., Co.* v. *Green Bay, etc., R. Co.* (1891), 45 Fed. 664; *Miltenberger* v. *Logansport R. Co.* (1882), 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; *Eells* v. *Johann* (1886), 27 Fed. 327.

The prevention of fires in cities, the supply of pure water for domestic purposes, and the furnishing of electric light for cities and towns, and the inhabitants thereof, are matters of the very highest public concern.

The power of eminent domain is conferred on water and light corporations as well as on railway corporations. §§5081, 5128 Burns 1908, Acts 1907 p. 277, §8, Acts 1889 p. 195.

The mortgage bondholders and stockholders of such corporations as are here involved are vitally interested in their maintenance as going concerns. Their property would be of little value if the plants ceased operation, if but for a brief period, and even their charters might be forfeited for nonuser. *Eel River R. Co.* v. *State, ex rel.* (1900), 155 Ind. 433, 456, 57 N. E. 388, and cases cited; 5 Thompson, Corporations (2d ed.) §5799.

Inasmuch as the same reasons exist for the recognition of

the doctrine here as in railroad cases, we do not feel warranted in denying the application of the rule to the facts found, because of the difference in character between railway corporations and this one.

While some of the broad statements laid down in *Fosdick* v. *Schall, supra,* have been limited by later decisions, the principle applied by the lower court here, has not been controverted. *Southern R. Co.* v. *Carnegie Steel Co.* (1900), 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458.

It is contended by appellant, however, that the greater portions of the claims given a preference here by the trial court are not within the recognized rule, because the supplies and materials were furnished more than six months before the receiver was appointed.

2. Generally claims originating more than six months prior to the receivership are not included in the preferential class, but there is no fixed rule as to the time limit.

Thompson, in his work on corporations (5 Thompson, Corporations [2d ed.] §6450), says. "Although the rule usually limits these preferential debts to those contracted within six months of the appointment of the receiver, this rule is not inflexible, and does not bar older meritorious preferential claims. All that is required is that the debts should have been contracted within a reasonable time before the appointment of a receiver and what is a reasonable time depends upon the circumstances of each particular case. In one case priority was given to a claim for materials furnished three years before the appointment of the receiver for which a note had been given sixteen months before the receiver was appointed. Under another case priority was given to a claim for coal supplied and used in operating the road eleven months before the appointment of the receiver. In another case priority was given to a claim for wages due twenty-two months before the appointment of a receiver."

In *Southern R. Co.* v. *Carnegie Steel Co., supra,* Justice

Harlan said, on page 292: ''But no absolute rule on the subject has been prescribed by statute or by judicial decisions. A claim accruing back of the six months immediately preceding the appointment of a receiver may, under the circumstances of particular cases, be accorded the same priority in the distribution of earnings that belongs to like claims arising within that period.''

In that case, the claims were accorded preferences, although more than six months intervened between their accrual and the appointment of a receiver, and notwithstanding the fact that notes, original and in renewal, had been executed for the debts contracted. *McIlhenny* v. *Binz* (1890), 80 Tex. 1, 13 S. W. 655, 26 Am. St. 705; *Hale* v. *Frost, supra; Burnham* v. *Bowen, supra; Atkins & Co.* v. *Petersburg R. Co.* (1879), 3 Hughes (U. S.) 307, Fed. Cas. No. 604; *Miltenberger* v. *Logansport R. Co., supra; Turner* v. *Indianapolis, etc., R. Co., supra.*

In this case, it was not contemplated that the supplies, materials, etc., should be paid for when furnished, but it was agreed that payment should be postponed until the plant should be so repaired as to enable its continued operation. The company was without credit. The supplies, etc., furnished it by appellees, alone enabled it to continue a going concern. The $15,000 expended from current earnings in repairs and betterments inured to the benefit of the mortgagee.

The labor of appellee Christian Flaugh, in repairing the boilers of the company, was performed on December 13, 1908, only seventeen days before the appointment of a receiver. His right to assert a preference for his claim was not waived by filing a mechanic's lien notice. §8295 Burns 1908, Acts 1899 p. 569; *Southern R. Co.* v. *Carnegie Steel Co., supra.*

We think that under the particular circumstances of this case, the lower court did not err in concluding, from the facts found, that appellees' claims were entitled to prefer-

ence, and for the same reasons there was no error 2. in overruling appellant's demurrer to the answer of National Equipment and Supply Company to the cross-complaint.

Appellant claims the decision of the trial court is not sustained by sufficient evidence. An examination of the record convinces us that the material facts found by the court are sufficiently supported.

Appellant filed a motion to correct the trial court's special finding of facts, and make the same more specific. The motion was overruled. This ruling is here assigned as 4. error, and is relied on by appellant for a reversal of the judgment. Such a motion is unknown to our code of procedure. The sole remedy in such case is furnished by a motion for a new trial. *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 241, 64 N. E. 860, and cases cited.

The record discloses no error justifying a reversal. Judgment affirmed.

NOTE.—Reported in 98 N. E. 865, and reported and annotated in 41 L. R. A. (N. S.) 695. See, also, under (1) 34 Cyc. 355, 359; (2) 34 Cyc. 355; 71 Am. St. 361; 2 L. R. A. (N. S.) 1013.