116    APPELLATE COURTS OF ILLINOIS.

Whitaker v. Wabash, Chester & Western R. Co., 206 Ill. App. 116.

Edwards Whitaker et al., v. Wabash, Chester & Western Railroad Company et al.
Louisville & Nashville Railroad Company, Appellant, Intervener, v. J. Fred Gilster, Receiver of Wabash, Chester & Western Railroad Company, Appellee.

RAILROADS, § 408*—*when lien for labor and materials is superior to lien of mortgage to secure bonds of railroad.* A lien for labor and materials furnished in the construction of an interlocking switch and signals at a railroad crossing, which were necessary to the operation of the railroad constructing same, under a written contract within six months prior to the appointment of a receiver for such railroad, *held* to be a superior lien upon the *corpus* of the railroad property over that of a mortgage given to secure the bonds of the railroad, in a suit to foreclose such mortgage.

Appeal from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded with directions. Opinion filed April 13, 1917.

J. M. HAMILL and C. P. HAMILL, for appellant intervener.

H. CLAY HORNER, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

This is a proceeding by Edwards Whitaker *et al.*, in equity to foreclose a mortgage executed by the Wabash, Chester & Western Railroad Company *et al.*, upon its railroad property, and for the appointment of a receiver therein.

The appellant filed an intervening petition asking for the allowance of certain claims for labor and materials furnished by it in the construction of an interlocking switch and signals at the crossing of appellant's road and the Wabash, Chester & Western Rail-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

road, and by this petition it was sought to procure a superior lien to that of the mortgages upon the railroad property of said Wabash, Chester & Western Railroad Company, as being for labor and material furnished under written contract within six months prior to the date of the appointment of the receiver.

In 1892 the Tamaroa & Mt. Vernon Railroad Company constructed a railroad from Chester to Mt. Vernon and filed a petition with the railroad and warehouse commissioners for leave to cross the L. & N. Railroad at grade. The commissioners granted permission to make this crossing but required that the crossing of the tracks be protected by a system of interlocking signals and switches, to be agreed upon by the parties and approved by the commissioners; the cost of the construction and expense of maintaining such device to be paid for by the Tamaroa & Mt. Vernon Railroad Company, and that after it was constructed the operating expenses to be divided equally between that company and the L. & N. Railroad Company. A system of interlocking switches was agreed upon by the railroad companies and the interlocking signals and switches were built as required by the commission by the Tamaroa & Mt. Vernon Railroad Company. On November 29, 1892, an order was issued by the commission approving the plant installed at said crossing, and required said device to be frequently inspected and that the same should be kept in first-class working order and good repair.

It appears that afterward the Wabash, Chester & Western Railroad Company purchased this railroad from the Tamaroa & Mt. Vernon Railroad Company, together with all its property, rights, privileges and franchises, including the interlocking plant and the obligations with reference thereto, which was received subject to the order of the commission and contract above referred to. It further appears that for some

118    APPELLATE COURTS OF ILLINOIS.

Whitaker v. Wabash, Chester & Western R. Co., 206 Ill. App. 116.

years prior to October, 1913, the said Wabash, Chester & Western Railroad Company operated the said railroad but failed to repair and keep in good condition the interlocking plant so that it became out of repair and had to be completely overhauled and put in good condition to protect the said crossing and make it safe for passengers, employees and freight transportation over the road. It further appears that the said Wabash, Chester & Western Railroad Company was not in a financial condition to repair and put said interlocking device in proper condition, so that it entered into a contract with the L. & N. Railroad Company to make the necessary repairs, for which it agreed to pay the expense thereof not to exceed $2,000, which limit was afterwards extended so as to permit additional expense. Owing to delay in negotiations, assembling of materials, etc., the appellant, L. & N. Railroad Company, did not begin actual work of overhauling said plant until June 18, 1914. It was at about this time that the receiver was appointed under foreclosure proceedings and took possession of the railroad and began operating it, so that a portion of the work of overhauling and repairing the interlocking plant was done after the receiver took possession of the railroad. The appellant, L. & N. Railroad Company, filed an intervening petition in said foreclosure suit setting forth the above facts in detail and alleging that it was necessary in order to prevent injury to passengers, employees and property of all persons transported over the railroads of the Wabash, Chester & Western Railroad and the L. & N. Railroad to overhaul, reconstruct and repair the said interlocking plant. To this intervening petition the appellee filed an answer admitting that the work and material furnished was necessary to the operation of the Wabash, Chester & Western Railroad and were necessary repairs of the interlocking crossing mentioned in the intervener's petition, and submitted to the court for its determination the question as to

whether the amount properly due under said contract should be a lien upon the railroad property as prayed for. Upon a hearing a decree was granted allowing appellant the amount of $2,600, but denied its right to a prior lien over the mortgage lien of appellee.

Under the assignment of errors made by the appellant, L. & N. Railroad Company, there is but a single question presented for the determination of this court and that is: "Did the court err in holding that the lien of appellant intervenor, for labor and materials furnished, was not a preferred one and had not priority over the lien of the mortgage bondholders and should not be paid out of the *corpus* of the property?" It clearly appears from the allegations of the intervening petition and the admissions contained in appellee's answer thereto, and the evidence, that the materials furnished and the repairs made by the intervening petitioner were necessary for the operation of the Wabash, Chester & Western Railroad, for the safety of passengers and the transportation of freight over said road, and that unless such repairs were made it would interfere greatly with the operation of the road and might result in injury to passengers. It was under these conditions that the contract was entered into between the intervening petitioner and the Wabash, Chester & Western Railroad Company to repair this plant and put it in proper condition for the proper operation of the road and safety in the transportation of passengers and freight. It further appears that the expense incurred by the intervening petitioner in the making of said repairs and reconstructing said plant was incurred within six months prior to the appointment of the receiver herein. It is insisted by counsel for appellee that while these repairs were necessary for the proper operation of this road that it could not be made a prior lien to its mortgages, and that while it may have been paid out of the earn-

ings it could not be paid out of the proceeds of the sale, or the *corpus* of the property. Quite a number of authorities have been cited by counsel for appellee in support of this contention, some of which seem to support this view and others not. The case most relied upon, however, is that of *Gregg v. Metropolitan Trust Co.*, 197 U. S. 183. We have examined this case and while the majority opinion holds that where there has been no diversion of the income by the bondholders, that in general a decree would not be granted requiring the payment of supplies furnished within six months before the receiver was appointed, out of the *corpus* of the fund, but in distinguishing that case from others before decided, apparently taking the other view of the question, the court says (in referring to the allowance in other cases): "The ground of such allowance as was made was not merely that the supplies were necessary for the preservation of the road, but that the payment was necessary to the business of the road." There was also a very strong dissenting opinion by three of the judges written in that case, in which the authorities were reviewed and a different conclusion was reached by the dissenting judges. In the case of *Central Trust Co. of Illinois v. Chicago, A. & N. Ry. Co.*, 232 Fed. 936, the court said, in commenting upon the effect to be given to the *Gregg* case, above referred to: "It is true that it is said in the *Rodger Ballast Car Company* case [83 C. C. A. 403], and in the *Chicago & Alton Railroad Company* case [141 C. C. A. 64], that the rule of the earlier cases in the Supreme Court has been narrowed by the decision in *Gregg v. Metropolitan Trust Co.*, 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717. But in none of these cases has it been denied that the ordinary current expenses of operation necessary to keep the road in a safe condition to be operated and protect the business of the road may be paid from the *corpus* of the

property when the income thereof is insufficient to pay such expense in preference to prior recorded liens thereon.  *Miltenberger v. Logansport Ry. Co.*, 106 U. S. 286," and other cases.  In the case now under consideration,. by the terms of the contract entered into between the intervening petitioner and the Wabash, Chester & Western Railroad Company, it was provided that as the work was done and the expense incurred the bills should be paid, and that in case of failure to pay the same within thirty days that the intervening petitioner had a right to institute suit at ·once for the collection of such bills, and it also appears that the repairing of this device was necessary to enable the Wabash, Chester & Western Railroad Company to conduct its business, and it seems to us, upon a careful reading of the case of *Gregg v. Metropolitan Trust Company, supra,* which goes the furthest of any case that we have seen, that this does not even preclude the appellee from its lien and satisfaction out of the *corpus* of the property.  Even if this case should be construed as holding that the claim now under consideration was barred from participating in the *corpus* of this fund, we do not think it is binding upon this court, inasmuch as this question was presented to the Supreme Court of the State of Illinois in the case of *St. Louis, A. & S. R. Co. v. O'Hara,* 177 Ill. 525, where it was held that, for necessary repairs furnished within six months, O'Hara was entitled to priority over the bondholders.  In that decision the cases of *Fosdick v. Schall,* 99 U. S. 235; *Quincy, M. & P. R. Co. v. Humphreys,* 145 U. S. 82, were referred to as supporting the contention of the bondholders, and the Supreme Court in the decision of that case, at page 529, says: "In support of the contention that the Circuit Court erred in holding that the claim for material was a preferred one and had priority over the mortgage to the Atlantic Trust Company, counsel have cited quite a

122     APPELLATE COURTS OF ILLINOIS.

Whitaker v. Wabash, Chester & Western R. Co., 206 Ill. App. 116.

number of decisions by the United States Supreme and Circuit Courts. We do not regard them as supporting the contention. The leading ones are *Fosdick v. Schall,* 99 U. S. 239, and *Quincy, M. & P. R. Co. v. Humphreys,* 145 U. S. 82, and they are valuable to us in determining the question for the sole reason that they announce the rule that where railroad property is in charge of a court for administration as a trust fund for the payment of incumbrances, it may declare a lien, prior in right to that of existing mortgages, in favor of claims accruing within a reasonable time prior to the application on account of wages, supplies and materials necessary to keep the road a 'going concern.' '' It seems to us under the evidence and admissions contained in this record that it was necessary to repair this interlocking plant in order that the road might be kept "a going concern." Counsel for appellee insist that the *O'Hara* case, above referred to, is not controlling and does not cover the question involved in this case. We think that counsel are mistaken in this. The language of the opinion clearly shows that the repairs and material furnished were given a prior lien over the mortgages, and the dissenting opinion places their dissent squarely upon the fact that they did not concur in giving to the claim of O'Hara preference over the mortgage debt, and displacing the priority of the mortgage lien created by the contract; and they expressly say that there was no diversion of income and no ground for giving such preference, except that the mortgaged property was improved. It appears to us that the *O'Hara* case is in point and controlling in this case. It was necessary and proper to keep this railroad a "going concern," and the property, if so kept, would be far more valuable upon a foreclosure sale than if it had been allowed to become out of repair, unsafe for the carrying of passengers and freight, and when the intervening

petitioner for the purpose of keeping the road in repair furnished the means and made the necessary repairs, it seems to us that it would be inequitable and unjust not to allow them a fair compensation for the money so expended. While in general these repairs should be paid out of the earnings of the property, yet the better rule seems to be that it is not necessary that there should be a diversion of these earnings in order to give the relief, for it is equally as important to keep the road a going concern whether there has or has not been such diversion. Pomeroy on Equity Jurisprudence, vol. 5, sec. 204.

We are of the opinion that the question here presented for our consideration has been determined by the Supreme Court of Illinois in the *O'Hara* case, above referred to, and that the conclusion there reached is just and equitable and should be followed. The decree of the Circuit Court is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

*Decree reversed and cause remanded with directions.*